## THE STATE *vs.* WEAVER ET ALS.

1. The legal sufficiency of an indictment cannot be tested upon demurrer to the *scire facias* issued on a forfeited recognizance, but the defendant should appear and answer to the indictment itself.

2. A recognizance to appear and answer an indictment, to be prefered at a future time against the principal recognizor, need not set out the offence charged with the technical accuracy required in the indictment, but it will be sufficient, if the offence be substantially described.

3. A charge of "persuading and inducing a negro woman slave, named A., the property of J. K., to leave her master's premises and employ, with a view to take said slave to another State and convert her to his own use," though not in the technical language of the statute, is a substantial description of an offence embraced by its provisions.

ERROR to the Circuit Court of Sumter. Tried before the Hon. George W. Stone.

THIS was a proceeding by *scire facias* against the defendants upon a bail bond for the appearance of James Weaver to answer to an indictment to be prefered against him, &c. The writ of *scire facias* recites that "James Weaver, being solemnly called to come into court and answer unto the State of Alabama on an indictment prefered against him for persuading and inducing a negro woman slave, named Ann, the property of John Kennedy, to leave her master's premises and employ, with a view to take said slave to another State and convert her to his own use," &c. To this *sci. fa.* the defendants appeared and pleaded that there was but one indictment on record in said Circuit Court against said James Weaver, and they set the same out in their plea, the same being an indictment against him for feloniously stealing and carrying away a slave named Ann, the property of John Kennedy, of the value of six hundred dollars, with a view to convert said slave to his own use. The second count in the indictment charges that the defendant did feloniously entice away said slave, with a view to convert her to his own use, &c., and that for failing to appear and answer to the foregoing indictment, the judgment *nisi*, in the *scire facias* mentioned, was rendered: Wherefore they pray the same may be inspected by the court, and they pray judgment whether the said plaintiff ought to have the aforesaid action against them, &c. To this plea there was a demurrer, which was overruled by the court, and the solicitor for the State refusing to reply to said plea, judgment was rendered by the court, discharging the defendants. To reverse this judgment the State prosecutes this writ of error.

ATTORNEY GENERAL, for the State:

1. The plea was bad, for there was no variance between the recognizance and the *scire facias*, and no material variance between the recognizance and the offence charged in the second count of the indictment. Superadded words of condition, beyond what the statute requires, will not invalidate the recognizance.—Howie & Morrison v. The State, 1 Ala. 113.

2. The plea was bad in not denying that there was any such recognizance as the one recited in the *scire facias*. The fact

The State v. Weaver et als.

that the plea was taken, in short, by consent, will not alter the case.—Gayle v. Randle, 4 Port. 232.

3. The conusors are bound by the terms of their recognizance. The appearance of the party is its chief end, and the want of an indictment against the party, in the court to which he is bound, is no excuse for not appearing.—State v. Steret, 6 Halst. R. 124; State v. Cooper, 2 Blackf. 226. The court, and not the party, must judge of the necessity of his appearance. A party is not legally discharged, except by an order of court to that effect.—Authorities *supra*, and 11 Mod. 200, cited in Viner's Abr. 168, D; 2 Hawk. 173; 1 Chitty Cr. Law, 105, and authorities there cited; Ellison v. State, 8 Ala. 273; Shreeve & Knapp v. State, 11 ib. 678.

VARY & VARY, for the defendant:

1. There is no such crime known to the law of this State as is recited in the judgment *nisi*.—Clay's Dig. 419, §§ 16, 18. It must be an offence known to the law to sustain the judgment *nisi*.—Whitted v. The Governor, 6 Port. 335; Howie & Morrison v. The State, 1 Ala. 113-19.

2. The bond is defective and absolutely void. In cases of bail bond, if it appear upon the face of the declaration that the bond has been made contrary to the provisions of the statute, the defendant may demur or move in arrest of judgment.—Chitty's Pl. vol. 1, 484. The obligors in this bond did not become bound for the appearance of Weaver to answer the offence set forth in Clay's Dig. 419, § 16, nor the one in the § 18 ib., nor in any other act of this State, nor to answer any offence known to the common law.

3. Variance between the judgment *nisi* and the indictment. Neither the bond nor the judgment *nisi* show that the obligors became bound for Weaver's appearance to answer this indictment. It is not law that the obligors should be held liable for the default of the accused to answer any other than the identical charge specified in their obligation. It is necessary in order to show a breach of a recognizance that the accused was called to answer the same charge which his recognizors have stipulated that he should answer. Any charge variant from the condition of the recognizance will not show a breach, and a judgment *nisi* cannot be supported.—Badger & Clayton v. The State, 5 Ala.

21-24; 6 Port. 335; 1 Ala. 113-19; 15 ib., 436-43.  The recognizors are entitled to stand on the condition they have stipulated, and the State must show affirmatively all that is necessary to charge them.—Howie & Morrison v. The State, 1 Ala. 119.

CHILTON, J.—We think the plea in this case was bad, and constituted no bar to the prosecution of the *scire facias*, and that the demurrer should have been sustained to it; but as this demurrer would have reached back to the *scire facias*, we must look to that to determine whether it can be supported.  If it cannot, the result of the case in the court below is correct, and we would not reverse, because no injury has resulted to the State.

The indictment recited in the judgment *nisi*, for failing to appear and answer which, the parties defendant were put in default, is for *pursuading* and *inducing* the slave to leave her master's premises and employ, with a view to take her to another State, and convert her to his own use.

The statute enacts, "If any person shall directly or indirectly persuade or induce any slave to leave his, her, or their master or mistress' service, with the intent and design to depart or escape to some other country, where such slave may enjoy his or her freedom, or shall harbor or conceal such slave, &c., he shall on conviction be punished, by imprisonment in the penitentiary for a period not less than five, and not exceeding fifty years."—Clay'sDig. 419, § 16.  It is very clear that the offence, specified in the indictment recited in the judgment *nisi*, is not the crime denounced by the section of the penal code above quoted.

The 18th section on the same page, declares that every person, who shall inveigle, steal, carry, or entice away, any such slave, with intent to convert such slave to his own use, or the use of any other person, or to enable such slave to reach some other State or country, where such slave may enjoy freedom, such person on conviction shall be punished, by imprisonment in the penitentiary for a period not less than ten years.  We are of the opinion that this section would not sustain the indictment which the *scire facias* shows the defendant was called to answer.  The terms, *induce* or *persuade*, are not synonymous with *inveigle, steal, entice*, or carry away, and the penal code itself makes the distinction, by using the terms respectively as ap-

plicable to different grades of offences in respect to the slave population of the State. The indictment then, *as set out in the judgment nisi*, not conforming to any statute, cannot be supported, and as at the common law, no such offence existed, the *scire facias* stands as though the party was called to answer an insufficient indictment.

But it by no means follows that because the indictment is insufficient, the defendant is discharged from his obligation to appear and respond to it in some of the modes allowed by the practice of the courts. Had he appeared, and succeeded in quashing the indictment, the solicitor could have prefered a new bill. We do not think that it is proper to test the legal sufficiency of an indictment upon a demurrer to a *scire facias*, but the defendant should appear and answer to the indictment itself. When a party is recognised to appear before the court to answer to an indictment to be prefered against him in future for the violation of a criminal law, it is not required that the recognizance should set forth with *technical* accuracy the indictment, which the State may exhibit against him. This cannot well be done. But the offence for which the party is recognised to appear may be stated in general terms, and the judgment *nisi* need only set forth that the accused was required to answer the charge which his recognisors have stipulated he should answer; that he made default, and that the recognizance thereby became forfeited, unless, &c.—Howe & Morrison v. The State, 1 Ala. 118. The authorities cited by the Attorney General, are ample to show that the person recognised must appear in such case, and that a plea that no indictment was exhibited against him at the term he stipulated to appear, or since, is neither good in form, nor substance. Much less is it an answer to the *scire facias* that the grand jury have found a good bill of indictment against him for stealing the slave, named in the recognizance as having been pursuaded and induced to quit her master's premises and employ, with a view to her being taken out of the State and converted by the accused to his own use. There is no question here as to a variance between the condition of the recognizance and the judgment *nisi*. The objection is, that the charge alleged against the defendant, as shown by the recognizance and set forth in the judgment *nisi*, does not constitute an offence cognizable by the laws of this State. We have seen that an indictmen

21

pursuing the words of this recognizance, descriptive of the offence, could not be supported, but we have yet to find a case where it is decided that the recognizance should set forth the offence with the particularity required in an indictment.

In the case before us, the recognizance does bind the party to answer for a breach of the criminal law, not describing it in the technical language in the statute, but substantially. We should be in a most deplorable condition truly, if it were no breach of the criminal law of the State for one person "*to persuade and induce the slaves of another to leave the premises and employ of their owner, with a view to take said slaves to another State and convert them to his own use.*" If a good indictment could not be framed upon such a charge as this, (construing the term *convert* in its legal sense as a tortious appropriation of the property of another to the offender's own use,) then our Legislature has been guilty of a most remakable oversight indeed, and one, which, in the present posture of affairs, might well excite alarm and apprehension for the security of the slave property of the State. But such is not the case. The law makes ample provision for the punishment of all such offenders. Laying out of view the technical language which should be used in framing the indictment, as foreign from the question before us, the substance of the offence denounced by the statute is sufficiently stated to require the defendant to appear and answer. In the language of this court (per ORMOND, J.,) in Mooney v. The State, " it is the influence exerted over the mind of the slave, as an intelligent being, to quit his master's service," which is the evil the statute designed to remedy. "This," says he, is "consummated when the slave by promises or *persuasions is induced* to abandon his master's service," &c.—8 Ala. 333.

But it is supposed that the view we take of the sufficiency of this recognizance is opposed to the previous decisions of this court. The counsel is wholly mistaken. On the contrary, while it is opposed to none, it is sustained by several analogous in principle. In Hall v. The State, 9 Ala. 827, the stipulation in the recognizance was that the accused should appear, &c., to answer a charge to be exhibited against him "for carrying concealed weapons" and it was held sufficient, although the statute on which the prosecution was founded declared that " every one who shall hereafter carry concealed about his per-

son a bowie knife, or knife or instrument of a like kind or description, by whatever name called, dirk, or other deadly weapon," &c., "unless such person be threatened with, or have good cause to apprehend an attack, or be traveling or setting out on a journey, shall, on conviction," &c.—Clay's Dig. 436 § 4. So in Bowden v. The State, 9 Ala. 58, the recognizance stipulated "to answer a charge against him for *resisting process*." Now no one would hold that an indictment in these words would be good, the statute making the offence consist in knowingly or wilfully resisting or opposing any office of this State in serving, or attempting to serve or execute any legal writ, &c. Yet it was held sufficient. So also, in Hall et al. v. The State, 15 Ala. 431, the recognizance stipulated that the accused should appear, &c., and answer to a bill of indictment, pending in said court against him *for a conspiracy*." It was objected by the counsel that the recognizance was not sufficient to sustain any judgment of forfeiture, as it mentioned no legal offence, but this court, after recurring to the decisions I have quoted, and other authorities equally pointed, say that it is not objectionable for generality, although it would have been more regular to have set out the particular conspiracy with which the accused was charged.

The true doctrine is laid down in The People v. Blackman, 17 Wend. 255, cited and approved by this court, in Hall v. The State, 9 Ala. 827, and 15 ib. 435, that the recognizance is valid if the offence be *substantially* charged, though not in the language of the statute. It would open a new field of litigation in criminal cases, if the most flagitious crimes could go unpunished, and the perpetrators of them be discharged, by reason of informalities in the recognizance in failing to describe the offence with technical accuracy, or for informalities or irregularities in warrants of commitment, &c.—See on this subject Clay's Dig. 469, § 40.

The case of the Governor v. Jackson, 15 Ala. 703, has no application to the case before us. There a recognizance was taken by a sheriff on the charge of a felony. The statute gave him no authority to take it, and we held it void. Here the recognizance was taken before a circuit judge with full power to act in the matter.

Could we entertain the least doubt as to whether the charge for which the accused in this case was recognised to appear and

answer at court, involved an offence against the criminal laws of this State, then we would consider the argument of the counsel, deduced from the constitution, which declares that no "person shall be accused, arrested or detained, except in cases ascertained by law," but we should be sorry to doubt upon a proposition which is so plain, and which is of such vital interest to the people of the State. The accused must appear in accordance with the stipulation in his recognizance, and if the State fails to exhibit a charge against him, he will be entitled to his discharge upon a proper application. Until such discharge, he must appear as he has bound himself to do. Let the judgment be reversed, and the cause remanded.