## Case No. 16,138.

### UNITED STATES v. REESE.

[4 Sawy. 629.] [1]

Circuit Court, D. California. Oct. 9, 1866.[2]

FRAUD AGAINST UNITED STATES — FORGERY OF MEXICAN LAND GRANT PAPERS — PERJURY — JURISDICTION OF FEDERAL COURTS—BAIL.

1. The first section of the act of March 3, 1823, for the punishment of frauds committed on the government of the United States (3 Stat. 771), applies only to instruments altered or forged for the purpose of obtaining moneys from the United States, their officer or agents.

[Cited in U. S. v. Moore, 60 Fed. 739.]

[Distinguished in U. S. v. Spaulding, 3 Dak. 85, 13 N. W. 362.]

2. There was no act of congress, previous to that of May 18, 1858 (11 Stat. 290), ·covering cases of the altering or forging of documents or title-papers, or the uttering or publishing them as true, for the purpose of establishing against the United States a claim to land in California.

3. It seems that an indictment found for an act which does not constitute an offense· under the laws of the United States, is still "a suit, controversy, matter or cause depending," in which perjury may be committed.

4. Although there are no offenses against the United States, except such as are declared by special enactment, and the criminal jurisdiction of the circuit court is in this respect limited, yet it has jurisdiction to inquire into and pass upon all acts charged by competent authority to be public offenses, and presented to it by such authority for its consideration.

[Cited in U. S. v. Eldredge (Utah) 14 Pac. 45.]

5. If, whilst objections to an indictment are under consideration, the accused is admitted to bail, the recognizance will be of binding obligation though the indictment should eventually be adjudged void.

[Cited in U. S. v. Evans. 2 Fed. 150.]

[Cited in U. S. v. Eldredge (Utah) 13 Pac. 679.]

6. A recognizance of bail embracing the amounts required upon two separate indictments, is not on that account objectionable.

This was an action upon a recognizance of bail, and was tried upon stipulation of the parties by the court without the intervention of a jury, at the June term of 1866. The court found for the United States. The facts are sufficiently stated in its opinion.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

[2] [Reversed in 9 Wall. (76 U. S.) 13.]

Delos Lake, U. S. Atty. for the United States.

E. Casserly, for defendant.

FIELD, Circuit Justice. In December, 1856, Jose Y. Limantour was indicted by the grand jury of the circuit court of the United States for uttering and presenting as true to the board of land commissioners, created under the act of March 3, 1851 [9 Stat. 631], to ascertain and settle private land claims in the state of California, a false writing, purporting to be a grant of certain described lands from the Mexican government, with intent to defraud the United States, knowing the same to be false. To this indictment Limantour appeared and pleaded not guilty. He was then admitted to bail on motion of his counsel, the amount being fixed at $30,000.

Soon after the issue was thus joined, a motion was made on the part of the United States to set the case for trial early in January, 1857. This motion was resisted, and at the same time application was made on the part of Limantour for a continuance of the cause, and in support of the application his affidavit was read, in which he asserted the genuineness of the grant alleged by the United States to have been forged; and that it was made at the time and by the officers as averred by him. For alleged perjury in making this affidavit, the grand jury soon afterward found a second indictment against him. To this indictment he also appeared and pleaded not guilty, and upon the motion of his counsel was admitted to bail, its amount being fixed at $5000.

By order of the court the recognizance of bail was taken in one instrument, the obligation of the sureties being the amount required in both cases. The defendant Michael Reese and one Manuel Castro became the sureties of Limantour, binding themselves jointly and severally in the sum designated. It is upon this recognizance that the present action is brought. It recites the finding and presentment of the two indictments, the commitment of the defendant thereon, and the order of the court for his discharge on furnishing the required bail, and is conditioned that the defendant shall personally appear at the next term of the court, and at any subsequent term thereafter, "to answer all such matters and things as shall be objected against him," and to abide the order of the court, and not depart therefrom without leave first obtained. This recognizance is dated the fifth of February, 1857.

At a subsequent term of the circuit court in August of that year, the defendant appeared for trial in both cases, with witnesses in attendance from the city of Mexico. The district attorney thereupon moved for a postponement of the trials. At this time two cases of Limantour for land claimed under alleged Mexican grants were pending in the district court of the United States, on appeal from decrees of the land commissioners, by whom the claims had been confirmed. One of the cases was for a claim under the alleged forged grant. The witnesses in attendance were persons who had been brought from Mexico to testify in the land cases. It was therefore stipulated between the counsel of the parties: on the one side, that the postponement desired by the government should be assented to; and on the other side, that neither of the criminal actions should be brought to trial until after final decrees had been rendered in the two land cases by the district court; and if both or either of the decrees were in favor of the claimant, the criminal actions should be dismissed by the United States; but if the decrees were adverse to the claimant, reasonable time should be given him to prepare for the trial of the criminal actions, and to procure the attendance of such of his witnesses as resided without the state of California. The stipulation was entered on the minutes of the court, and the postponement desired was granted in accordance with its terms.

In December, 1858, the district court, by its decrees, rejected the claims of Limantour in the land cases [see Case No. 15,601]; and soon afterward the district attorney moved that the criminal actions be set for trial. After repeated adjournments, the motion was finally argued and decided in March, 1859, and the trials directed for the twenty-fifth of April following. On the latter day the two cases were called, but Limantour did not answer to the call in either of them, and the recognizance of his bail was ordered to be forfeited.

As a defense to the action, the defendant relies upon several grounds, the principal of which are: First, that the acts charged in the two indictments did not, at the time of their alleged commission, constitute any offense under the laws of the United States; and as a consequence, that the indictments and all proceedings thereunder, including the requiring of bail for the appearance of the defendant, were void; second, that if the indictment and proceedings thereunder were not void, the stipulation of August, 1857, for a postponement of the trial, released the sureties from liability on their recognizance; and, third, that the recognizance was void in embracing the amount required as bail upon both indictments.

The acts charged in the first indictment, the uttering and publishing as true the alleged forged grant, were undoubtedly deemed to fall within the class of offenses defined by the first section of the act of congress of March 3, 1823, "for the punishment of frauds committed on the government of the United States," and not under the act of March 3, 1825, as supposed by the counsel of the defendant. That section provides that "if any person or persons shall falsely make, alter, forge or counterfeit; or cause or procure to be falsely made, altered, forged or counterfeited; or willingly aid or assist in the false

making, altering, forging or counterfeiting, any deed, power of attorney, order, certificate, receipt, or other writing, for the purpose of obtaining or receiving, or of enabling any other person or persons, either directly or indirectly, to obtain or receive from the United States, or any of their officers or agents any sum or sums of money; or shall utter or publish as true, or cause to be uttered or published as true, any such false, forged, altered or counterfeited deed, power of attorney, order, certificate, receipt, or other writing, as aforesaid, with intent to defraud the United States, knowing the same to be false, altered, forged or counterfeited; or shall transmit to, or present at, or cause or procure to be transmitted to, or presented at, any office or officer of the government of the United States, any deed, power of attorney, order, certificate, receipt, or other writing, in support of or in relation to any count or claim, with intent to defraud the United States, knowing the same to be false, altered, forged or counterfeited, every such person shall be deemed and adjudged guilty of felony; and being thereof duly convicted, shall be sentenced to be imprisoned and kept at hard labor for a period not less than one year, nor more than ten years, or shall be imprisoned not exceeding five years and fined not exceeding $1000." 3 Stat. 771.

The indictment uses the language of the second paragraph of this section, and was supposed to cover a case embraced by its terms. But we are of opinion that the section applies only to instruments altered or forged for the purpose of obtaining moneys from the United States or their officers or agents. The first paragraph covers the altering or forging of such instruments; the second paragraph the uttering or publishing them as true; and the third their transmission or presentation to any office or officer of the government. Neither of them applies to an instrument forged for the purpose of obtaining a cession of land from the United States, or the confirmation of a claim to land alleged to have been granted by the Mexican government. There was no act of congress which reached a case of this nature until the eighteenth of May, 1858, when an act was passed covering all cases of the altering or forging of documents or title papers. or uttering or publishing them as true for the purpose of establishing against the United States any claim to lands in California. 11 Stat. 290. That act was passed, it is believed, in consequence of the defects in existing legislation, suggested by this case of Limantour.

As to the second indictment, there is much greater doubt whether the act alleged was not in fact at the time an offense under the laws of the United States. The objection is, that perjury cannot be affirmed of any testimony under oath upon an indictment for an act not constituting an offense, a position to which we are not prepared to yield our assent. The act of 1790 speaks of this offense as one which may be committed "in any suit, controversy, matter, or cause depending in any of the courts of the United States." We do not perceive how it can justly be said that the first indictment, with issue joined upon a plea of not guilty, did not constitute "a suit, controversy, matter, or cause depending."

But admitting that neither of the indictments allege acts constituting a public offense at the time of their commission, and that on a demurrer it would have been so held, the conclusion asserted by counsel does not follow that all the subsequent proceedings of the court thereon, including the requiring of bail for the appearance of the defendant, were void.

The circuit court of the United States has cognizance of all crimes and offenses cognizable under the authority of the United States. Judiciary Act of 1789, § 11 [1 Stat. 78]. Its cognizance is exclusive in capital cases and concurrent with that of the district court in all other cases; and although there are no offenses against the United States—except such as are declared by specific enactment, and the criminal jurisdiction of the circuit court is in that respect limited, yet the court having jurisdiction to inquire into all public offenses thus declared by law, must, as a necessary consequence, have jurisdiction to inquire into and pass upon all acts charged by competent authority to be public offenses, and presented to it by such authority for its consideration. The authority provided by law for making such charges and presenting them to the court is the grand jury of the district. Its special duty is to inquire into all public offenses against the United States committed or triable within the district, and to make true presentment of them to the court. The law does not assume the infallibility of this body, but provides for its possible errors arising from imperfect knowledge of the statutes, or a misapprehension of their provisions, or ignorance of the established forms of procedure. It therefore subjects such action, whatever it may be, legal or illegal, valid or void. to the supervision and correction of the court. When its action is presented, the jurisdiction of the court attaches to consider it, and to determine its validity. But the time and manner in which its validity shall be considered must depend upon the business pending and the established practice of the court. To the proper and efficient administration of justice there must be some order and system in all judicial proceedings. The party complained of has a right to be heard, and of securing the aid of counsel, if desired; time, therefore, to prepare his objections and procure his counsel must be afforded. If he claim that the action of the grand jury is illegal or void, he may ask to have the indictment quashed, or he may interpose a demurrer, or he may plead not guilty to the indictment and reserve his objections until the trial. But whether he pursue one course or the other, some time will be consumed amounting in the great major-

ity of cases to several days. If whilst these proceedings are going on, and the objections taken are under advisement, the defendant asks a discharge on bail, it is competent for the court to allow it, and the recognizance of bail given in such case will be a binding obligation, even though the indictment should eventually be adjudged void. The authority of the court to pass upon the validity of the action of the grand jury, and over the defendant whilst this validity is under consideration, is not an usurped authority, but an authority essential to the exercise of the general jurisdiction with which the court is clothed over all offenses cognizable under the laws of the United States.

The error of the argument of the learned counsel of the defendant consists in not distinguishing between the action of a court invested with this general criminal jurisdiction, and the action of a court having no criminal jurisdiction whatever. In the one case authority to inquire whether an act alleged to be an offense be in truth such offense, is an essential accompaniment of the jurisdiction over the act when once it is adjudged to be an offense. In the other case the attempt to inquire into the matter at all would be an act of pure usurpation. The argument of the counsel would be good if applied to criminal proceedings commenced in a probate court of the state, that court having no criminal jurisdiction whatever. If it were good when applied to criminal proceedings in the circuit court, such proceedings would be a constant source of apprehension to the officers of the court, and would often prove more injurious to them than to the defendant himself. And this singular result would follow: if the court should refuse to look into the indictment and to pass upon its validity, the judges would be justly censurable for neglect of duty; but if the court detained the defendant in custody whilst considering its validity, the judges would be liable to an action for false imprisonment if their ultimate decision should be that the indictment was void.

It follows that the court had authority to require bail of Limantour; and the recognizance in question is not void by reason of the insufficiency of the acts charged in the indictments. The condition annexed to the instrument is usual in such cases; and is not fulfilled unless the defendant personally appear as provided; unless he answer all matters then objected against him; unless he abide the order of the court; and unless he remain before the court until permitted to depart. A compliance with one or more of these provisions will not suffice; he must comply with all of them. It often happens that the indictment under which an arrest is ordered is set aside, or a nolle prosequi is entered, or a verdict of acquittal after trial is had, and yet in the progress of the case such evidence is developed as shows that an offense has been committed by the defendant which requires other and different proceedings. The condi-

tion of the recognizance is intended to meet all possible disclosures of crime, and to secure the appearance of the defendant to answer "all matters and things which may be objected against him;" and therefore he is not allowed to depart without leave of the court, although the particular ground of his original arrest may be removed. Hawk. P. C. bk. 2, c. 15, § 84; State v. Stout, 11 N. J. Law, 124; Champlain v. People, 2 N. Y. 82. In this case the defendant, even if he had succeeded in obtaining a discharge from arrest upon the indictments, might perhaps have been detained to answer a charge for perjury or subordination of perjury in the land cases before the board of commissioners or the district court.

The stipulation of August, 1857, as observed by counsel, is most unusual in all its features, and yet under the circumstances may be justified. The grant alleged to be forged, and in swearing to the genuineness of which the forgery was charged, had been adjudged valid by the board of land commissioners, and the appeal from its decree was at the time pending undetermined. The postponement of the trial until this appeal was disposed of was a very proper exercise of the power of the court, provided the accused waived his right to a speedy trial and assented to the postponement. In this act we do not perceive any ground upon which the bail can claim exemption from liability on their recognizance. They were not bound to continue as sureties any longer from this circumstance than without it. They could at any time afterward have surrendered the defendant and been exonerated. In the theory of the law he was in their custody, as jailors of his own choosing, subject to be surrendered at any moment. If they failed to exercise their power over him they must bear the responsibility attached to the position they voluntarily assumed.

The objection that the decrees of the district court were not final at the time of the alleged forfeiture of the recognizance, because they were for five years subsequently subject to appeal to the supreme court, and to reversal by that tribunal, is untenable. The stipulation evidently had reference to the immediate action of the district court upon the appeals pending, and not to its possible ultimate action after the cases had been passed upon by the supreme court; nor did it contemplate a delay of five years from the entry of the decrees before the trials should be had in case no appeal to that tribunal was taken.

The objection to the recognizance that it embraced the amount required as bail upon both indictments is equally untenable. The indictments constituted the occasion for the arrest of the defendant, but the recognizance was not that he should appear in court and answer them, but that he should appear and answer "all matters and things" which might be objected against him. The fact that there were two indictments undoubtedly governed

the court in fixing the amount of the bail; they constituted the moving cause, so to speak, of the action of the court; but they did not control the form of the recognizance, or determine the extent of the liability of the sureties. They are referred to in the instrument by way of recital to the conditions annexed, but in no respect qualify or restrain them.

We have given to the objections of the learned counsel of the defendant the most careful consideration, but are unable to perceive in them anything which will defeat a recovery by the plaintiffs. Judgment will, therefore, pass for the United States for the amount of the recognizance: namely $35,000, and costs.

NOTE. September 24, 1866. This case was taken to the supreme court of the United States, and was there reversed on a single point, viz.: that the stipulation of August, 1857, for a postponement of the trials until the appeals on the land cases were disposed of, released the sureties from liability on their recognizance. Mr. Justice Field wrote the opinion of that court, reversing his own decision on the point referred to. See 9 Wall. [76 U. S.] 13.