HENRY B. KEPLEY *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon January 20, 1888.*

123 367
123 393
123 394
123 367
132 491
123 367
166 45
166 430
123 367
103a[10] 84
123 367
210 [2]426

1. REPEAL OF STATUTES—*by implication.* If two inconsistent acts be passed at different times, the last is to be obeyed, and if obedience can not be observed without derogating from the first, it is the first which must give way.

2. SAME—*repeal by substitution of new section.* Where an amendatory act declares that a certain section of the amended act "shall be so amended that it shall read as follows," and then proceeds to make a distinct provision on the subject, that will operate to repeal the section of the amended act named, substituting therefor the amendatory section.

3. TERMS OF CIRCUIT COURTS—*time of changing them—constitutional limitations.* Section 14, article 6, of the constitution of 1870, prohibits the legislature from changing the times of holding the circuit courts at any session of the legislature, except the one next preceding the general election for judges of those courts. As the first election of circuit judges was, in

the same section, fixed for the first Monday in June, 1873, it follows that the legislature which sat in 1881 had no power to change the terms of the courts as fixed in 1879.

4.   The constitutional prohibition against changing the times fixed by the act of 1879 for holding the circuit courts in each county except Cook county, includes and involves a prohibition against repealing and then immediately re-enacting so much of that act as fixed the terms.

5.   SAME—*providing additional terms, at any time.*   The constitution expressly permits the General Assembly, at any session, to provide for additional terms of the circuit court in any county, and it may designate the character of business to be done at certain terms.

6.   SAME—*terms in Effingham county, as fixed by the acts of May and June, 1885.*   There is a clear repugnance between the act of May 29, 1885, which fixes the terms of the circuit court in Effingham county on the fourth Monday of April and the third Monday of October in each year, and the act of June 30, 1885, fixing the terms of that court on the third Mondays of March and October in each year, and being inconsistent, the latter act must prevail as the latest exposition of the legislative will.

7.   RECOGNIZANCE—*scire facias thereon—as to showing there was an indictment.*   In a proceeding by *scire facias* upon a recognizance given in open court for the appearance of the principal to answer to an indictment, it is not necessary to aver and prove that an indictment was ever found, to render the recognizors liable.

8.   SAME—*preliminary order requiring a recognizance—whether necessary.*   No order of court requiring or directing a party to enter into a recognizance is necessary to the validity of the one in fact given.  The recognizance itself is evidence that the party was required to enter into it, and did so.

9.   SAME—*validity of indictment—estoppel to question it, on scire facias.*   Where a recognizance states that it is for the appearance of the principal to answer an indictment then pending against him for perjury, this will imply that the requisite preliminaries with reference to the indictment were had.   Its recitals will estop the parties from raising any question, in a proceeding by *scire facias,* as to the validity of the indictment.

10.   SAME—*evidence to authorize judgment on forfeited recognizance.* The recognizance of record, and judgment of forfeiture, are competent and sufficient evidence, under appropriate averments in the *scire facias,* to authorize judgment of execution according to the form, force and effect of the recognizance, and, in an action of debt, to authorize judgment for the amount of the recognizance.

WRIT OF ERROR to the Circuit Court of Effingham county; the Hon. W. C. JONES, Judge, presiding.

Mr. SYLVESTER F. GILMORE, and Mr. HENRY B. KEPLEY, for the plaintiffs in error:

There was no authority of law for holding a term of the circuit court on the third Monday of March, 1886, therefore all proceedings had in this case at that time were null, and the judgment rendered herein is void.

The time of holding terms of the circuit courts in this State, is fixed by the legislature. No judge can hold a term of the circuit court in any of the counties of the State except at the time prescribed by the legislature, or at special terms called in pursuance of the provisions of the statute. *Telegraph Co.* v. *National Bank,* 74 Ill. 217; *Archer* v. *Ross,* 2 Scam. 303; *Goodsell* v. *Campbell,* 1 id. 555.

The legislature, by an act approved May 24, 1879, in force July 1, 1879, fixed the time of. holding the circuit courts in the second judicial circuit. (See Rev. Stat. chap. 37, par. 78 b, sec. 3.) By an act approved April 19, 1881, section 3 above was amended, having fixed the time of holding the circuit court of Effingham county on the fourth Monday of April and the third Monday of October of each year. (See Laws of 1881, p. 69.) It was by virtue of this act alone that any regular term of the circuit court could be held in any of the counties of the second judicial circuit. The act of May 24, 1879, was no longer in force. It was superseded by the amendatory act of April 19, 1881. *People* v. *Supervisors,* 67 N. Y. 109; 23 Am. Rep. 96.

In the case above cited the court says: "The earlier statute had been merged by being incorporated and united with new provisions in the amendatory act substituted for it. \* \* \* The substance and body of this act of 1867 were incorporated in and made a part of the act of 1873. \* \* \* During the existence of the law of 1873, no part of the law of 1867 was in force," etc.

"When an amendatory act declares that a certain section of the amended act 'shall be so amended that it shall read as

follows,' and then proceeds to make a distinct provision on the subject, that will operate to repeal the section of the amended act named, substituting therefor the amendatory act." *People ex rel. v. Young,* 38 Ill. 490.

In the light of these authorities, we invite the attention of the court to the subsequent legislation with reference to the fixing of the terms of the circuit courts of the second circuit.

By an act approved June 26, 1885, the legislature purported to fix the time of holding the circuit courts in the second circuit, by amending section 3 (and other sections) of the act of May 24, 1879. (See Session Laws, 1885, p. 68.) The legislature, on the 29th day of May, 1885, passed an act fixing the time of holding the courts in the second circuit by amending section 3 (and other sections) of the act of May 24, 1879, as amended by the act approved and in force April 19, 1881. (See Session Laws, 1885, p. 66.) Again, the legislature, by an act approved June 30, 1885, amended section 3 of the act of May 24, 1879. See Session Laws, 1885, pp. 67, 68.

The legislative intent, as evinced by these several acts, is not apparent, for, upon examination, it will be seen they greatly vary the time of holding the courts in the same counties in the circuit. If the legislative intent is to be ascertained by the act last approved, it will be observed that it is an amendment of section 3 of the act of May 24, 1879,—a law that had ceased to be operative more than four years prior thereto.

The act of May 29, 1885, which fixes the fourth Monday of April and the third Monday of October as the time for holding the circuit court in Effingham county, being the only enactment amendatory of the then existing law,—an amendment of the only law that was in force fixing the time of holding circuit courts in the second circuit,—became and still is the only law authorizing the holding of regular terms of the circuit courts in the second circuit.

The acts of June 26 and June 30, 1885, purporting to fix the time of holding the circuit courts in the second circuit, not by an independent enactment, but by amending an act that had ceased to exist April 19, 1881, were null and void, and a court held in conformity with the provisions of either would be without authority of law, and all proceedings of such tribunal would be void.

The record of the recognizance read in evidence was improperly allowed, for the reason that there was no record of the proceedings of the court upon which it was based.

There is no record of the return of the indictment into the circuit court, and of the order for recognizance. Book "M" does not purport to be the record of the criminal proceedings of the court. It is only a record of the recognizances taken in the court. The original record showing the return of the indictment by the grand jury into open court, the order for a recognizance, and the fixing of the bail by the court, are all preliminary, and essential to the taking of any legal recognizance. Such evidence not being adduced, no judgment could properly be rendered upon *scire facias.*

In bailable cases, the court, by an order, must fix the amount of bail upon the return of the indictment into court, or when the accused is brought before the court. Crim. Code, sec. 414.

Mr. R. C. HARRAH, for the People:

Under the condition of the recognizance and the law, as it has been long regarded, and, it is believed, uniformly settled, and is regarded the doctrine of this court, it is not necessary that it should be averred or proved that an indictment was ever found to render the principal and his recognizors liable on default by the principal. *O'Brien* v. *People*, 41 Ill. 459. See, also, *Chumasero* v. *People*, 18 Ill. 406; *Shattuck* v. *People*, 4 Scam. 477; *Mooney* v. *People*, 81 Ill. 134.

The recognizance states it was for the appearance of the principal to answer an indictment then pending against him

for perjury. This implies that the requisite preliminaries, with reference to the indictment, were had. *Shattuck* v. *People,* 4 Scam. 477.

They are estopped by the recitals in the recognizance from raising any question as to the validity of the indictment.

It is not necessary that there should be a formal order for recognizance and fixing the bail, when the recognizance is taken in open court. It needs no formal order to sustain it. It is evidence, of itself, that the court directed the recognizance to be taken for the amount mentioned in it. *Chumasero* v. *People,* 18 Ill. 405.

It is immaterial in what book the clerk enters a recognizance of record, so it is a record of the circuit court and contains the proceedings had in taking recognizances. The fact that it is a recognizance record, in which nothing is entered of record except recognizances in criminal cases, does not destroy its validity as a record. Its introduction, without any specific objection, fully sustained the averment in the *scire facias,* "which said recognizance then and there became a matter of record in said circuit court in the county of Effingham, aforesaid."

The act approved June 30, 1885, amending section 3 of an act concerning circuit courts, and to fix the time for holding the same, approved May 24, 1879, in force July 1, 1879, is a valid enactment of the legislature, and repeals, by implication, all prior conflicting laws, being the last expression of the legislative will.

If two inconsistent acts be passed at different times, the last is to be obeyed, and if obedience can not be observed without derogation from the first, it is the first that must give way. Potter's Dwarris, 155; *Dingman* v. *People,* 51 Ill. 277; *Devine* v. *Comrs. of Cook County,* 84 id. 690; *Geisen* v. *Heiderich,* 104 id. 540.

It is urged that because the titles of the two last acts fail to refer to section 3 of the act of 1879, as amended April 19, 1881, (see Session Laws of 1881, p. 69,) the laws are void,

and the holding of a term of the circuit court in the county of Effingham the third Monday of March, 1886, as provided in each of said acts, was without authority of law.

The amendment of April 19, 1881, could not change the time of holding courts in any of the counties in that circuit, for the reason it would have been in violation of section 14, article 6, of the constitution. "The General Assembly shall provide for the times of holding court in each county, which shall not be changed, except by the General Assembly next preceding the general election for judges of said courts; but additional terms may be provided for in any county. The election of judges of the circuit courts shall be held on the first Monday in June, in the year of our Lord, 1873, and every six years thereafter." All the legislature, at that time, had the power to do, was to provide additional terms of court.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This was a proceeding by *scire facias* for the purpose of obtaining judgment against Joseph N. Drewry, Henry B. Kepley, Sylvester F. Gilmore and David L. Drewry upon a recognizance entered into by them and forfeited, Joseph N. Drewry being the principal and the others sureties for the appearance of Joseph N. Drewry in the circuit court of Effingham county to answer to an indictment for perjury returned against him by the grand jury of that county. Judgment was rendered against all the defendants. Kepley and Gilmore bring the case up.

At the October term, A. D. 1884, of the circuit court of Effingham county Joseph N. Drewry was indicted for perjury, and the indictment was, at that term, duly returned by the grand jury in open court. At the same term Drewry was held to bail to answer the indictment, and he and his sureties, on October 25, 1884, entered into a recognizance in open court for the appearance of Drewry before said court at the next term beginning on April 27, 1885. Drury failed to appear at the April term, 1885; the recognizance was declared forfeited

and a *scire facias* was ordered to issue and did issue on July 29, 1885, commanding him and his sureties to appear at the next term of the court, beginning on the third Monday of October, 1885. The three sureties were served, but the writ was returned "not found" as to Joseph N. Drewry.

On October 25, 1885, Kepley and Gilmore appeared and filed a plea of *nul tiel record,* to which the People replied. At the October term, 1885, judgment by default was entered against all the defendants, but was set aside on October 26, 1885, on motion of the State's attorney.

At the next term of the court beginning on the third Monday of March, 1886, leave was given to file an amended plea. On March 23, 1886, such amended plea was filed by Kepley and Gilmore. It was a plea to the jurisdiction of the court, setting up that there was no March term of the circuit court of Effingham county provided by law, and that no special term had been called to be held in March, 1886, and that the March term then attempted to be held was not authorized by law and the court had no authority to try and determine the cause. To this plea the People filed a demurrer. The court below sustained the demurrer, which ruling was excepted to. Jury was waived; the cause was submitted to the court for trial; evidence was heard; judgment was rendered against the defendants for the amount of the recognizance and the costs, and adjudging the order of forfeiture theretofore entered to be made absolute. Kepley and Gilmore excepted to the judgment and ruling of the circuit court, and bring the case before us by writ of error to that court.

The main question presented by the record is this: was the term of court held by the circuit court of Effingham county beginning on the third Monday of March, 1886, at which the judgment in this case was rendered, a legal term and such as was provided for and authorized by law?

The legislature of this State passed "An act concerning circuit courts, and to fix the time for holding the same, in the

several counties in the judicial circuits in the State of Illinois, exclusive of the county of Cook," which was approved May 24, 1879, and in force July 1, 1879. The third section of this act fixed the times for holding the circuit courts in the several counties composing the second judicial circuit of the State, among which was Effingham county. By that section the circuit court of Effingham county was given two terms in each year, beginning respectively "on the fourth Monday of April and third Monday of October." Bradwell's Laws of Illinois of 1879, p. 83.

Two years later the legislature passed "An act to amend section three (3) of an act entitled 'An act concerning circuit courts, and to fix the time for holding the same in the several counties in the judicial circuits in the State of Illinois, exclusive of the county of Cook,' approved May 24, 1879. Approved and in force April 19, 1881." (Bradwell's Laws of 1881, p. 66.) This amendatory act of 1881 did not change the times of holding court in any of the counties, composing the second judicial circuit, but left the terms as they had been fixed by the act of 1879. Under the act of 1881, as under that of 1879, the terms of the circuit court of Effingham county began on the fourth Monday of April and the third Monday of October. The only respect, in which the act of 1881 amended the act of 1879, was in a matter relating to White county alone and will be mentioned hereafter.

At its session in 1885, the legislature passed three acts upon this subject. The first was approved May 29, 1885. It is entitled "An act to amend sections two (2), three (3) and ten (10) of an act entitled, etc., approved May 24, 1879, as amended by act approved and in force April 19, 1881." This act of May 29, 1885, left the terms of the circuit court of Effingham county, as they had been in the acts of 1879 and 1881, to-wit: the fourth Monday of April and the third Monday of October. It will be noted that the act of May 29, 1885, amends the amendatory act of 1881, or, in other words, it

amends the act of May 24, 1879, *as amended by act approved and in force April 19, 1881.* Bradwell's Laws of 1885, p. 60.

The second act passed in 1885 was approved June 26, 1885. It is entitled "An act to amend sections 3, 5, 8, 11 and 14 of an act entitled, etc., approved May 24, 1879." This act of June 26, 1885, fixes the terms of the circuit court in Effingham county as beginning "on the third Monday of *March* and the third Monday of October." It is to be noticed, that the act of June 26, 1885, amends the act of 1879 and not the act of 1881, or, in other words, it purports to amend the original act of May 24, 1879, and *not* the act of May 24, 1879, *as amended by act approved and in force April 19, 1881.* Bradwell's Laws of 1885, p. 61.

The third act passed in 1885 was approved June 30, 1885. It is entitled "An act to amend section three (3) of an act entitled, etc., approved May 24, 1879; in force July 1, 1879." The act of June 30, 1885, like that of June 26, 1885, names the third Monday of *March* and the third Monday of October, as the terms of the Effingham county circuit court, and it purports to amend section 3 of the original act of 1879, and not section 3 of *the act of 1879 as amended in 1881.* Bradwell's Laws of 1885, p. 62.

Defendant in error claims, that the act of June 30, 1885, is a valid enactment, and that, after its passage, the third Monday of *March* was the legal beginning of the spring term of the circuit court of Effingham county, while the plaintiffs in error contend, that the only valid enactment upon this subject passed by the legislature in 1885 was the act of May 29, 1885, and that the fourth Monday of *April* was the legal day for the opening of the spring term of that court.

There is a clear repugnance between the act of May 29, 1885, and the act of June 30, 1885, so far as relates to the time of holding the spring term of the circuit court in Effingham county. If, therefore, the objection hereafter discussed is not well founded, the act of June 30, 1885, must be taken

to be the law, as being the last expression of the legislative will. "If two inconsistent acts be passed at different times, the last is to be obeyed, and if obedience can not be observed without derogating from the first, it is the first which must give way." *Devine* v. *Commissioners of Cook County*, 84 Ill. 590.

Hence it remains to be considered whether the objection urged by plaintiffs in error against the act of June 30, 1885, is a valid one. That objection is, that, on June 30, 1885, the act of May 24, 1879, had been repealed or merged in the amendatory act of 1881, and that the act of June 30, 1885, was void as being an attempt to amend a law which, at the time of the attempted amendment, had no existence. Section 1 of the act of 1881 is as follows: "That section 3 of an act entitled, etc., approved May 24, 1879, and in force July 1, 1879, be amended to read as follows:" etc. In *The People* v. *Young,* 38 Ill. 490, it was held, that, when an amendatory act declares that a certain section of the amended act "shall be so amended that it shall read as follows:" and then proceeds to make a distinct provision on the subject, that will operate to repeal the section of the amended act named, substituting therefor the amendatory section. Upon the authority of this case, it is urged, that section 3 of the act of 1879 *as amended by the act of 1881* became substituted for the original section 3 in the act of 1879; that after April 19, 1881, such original section 3 was no longer in force; that the act of June 30, 1885, could not, therefore, have the effect of amending a section that did not exist. It will be observed, that the objection applies as well to the act of June 26, 1885, as to that of June 30, 1885. These acts both indicate a legislative intent to make the term begin on the third Monday of March.

As a further step in the argument, it is claimed, that the act of May 29, 1885, fixing the term on the fourth Monday of *April,* was valid because it amended the act of 1879 *as amended by the act of 1881;* that on May 29, 1885, *section 3 as amended in 1881* was in force, and hence the act of May 29, 1885, which amended it, amended an existing law.

There is much force in the position taken by plaintiffs in error. The doctrine in *The People* v. *Young, supra,* is sustained by respectable authorities, and, among them, by the following cases: *Blakemore* v. *Dolan,* 50 Ind. 194; *State* v. *Ingersoll,* 17 Wis. 631; *Goodno* v. *City of Oshkosh,* 31 id. 127; *The People* v. *Supervisors,* 67 N. Y. 109. The principle announced in these cases is undoubtedly a sound and correct one. It has no application however, to the case now under consideration.

Section 14 of article 6 of the constitution of 1870 is as follows: "The General Assembly shall provide for the times of holding court in each county, which shall not be changed, except by the General Assembly next preceding the general election for judges of said courts; but additional terms may be provided for in any county. The election of judges of the circuit courts shall be held on the first Monday in June, in the year of our Lord 1873, and every six years thereafter."

Judges of the circuit court were elected on the first Monday of June, 1879. The legislature next preceding the general election of June, 1879, passed an act, approved, as above stated, on May 24, 1879, which provided for the times of holding the circuit courts in the different counties, and fixed the fourth Monday in April and the third Monday in October as such times in Effingham county.

The next general election for judges of the circuit court was on the first Monday in June, 1885. Under the constitution the only legislature, which had the power to change the terms of the courts, as fixed in 1879, was the legislature next preceding the election of 1885, that is to say, the General Assembly, which was in session in 1885 and passed the foregoing act of June 30, 1885. Manifestly no legislature, which sat in 1881, had any power to change the terms as fixed in 1879.

If the amendatory act of 1881 had attempted to make any such changes, it would have been void. But it did not attempt to do so. The only change it made in the original section 3 of the act of 1879 was to provide an additional term for White

county and to designate the character of business to be done at certain terms in White county. The constitution expressly permits *any* session of the General Assembly to provide for *additional* terms in any county.

It may be said, that the act of 1881 re-enacted section 3 of the act of 1879, so far as the times of holding the courts were concerned. But we think, that the constitutional prohibition against changing the times fixed by the act of 1879 included and involved a prohibition against repealing and then immediately re-enacting so much of that act as fixed the terms. If the legislature of 1881 could not change the times of holding court as designated in section 3, it could not repeal the section 3 itself, which so designated those times, either expressly or by implication, nor could it merge that section into a new and amended one.

The evident intention of the constitution was to prevent legislative action upon this subject except at the sessions next preceding the general elections. It was the design of that instrument that the laws fixing or changing the times of holding the courts should be passed at the particular sessions named and should bear date as of those sessions. If the legislature of 1885 thought best to change the times of holding the courts, it was to look for the terms of court to be changed to a law passed at the session next preceding the last general election for judges, and not to a law passed in some intermediate year.

We are, therefore, of the opinion, that, for the reasons here indicated, the amendatory act of 1881 did not have the effect of repealing or merging or re-enacting section 3 of the act of 1879, but that said section 3 was in force when the acts of June, 1885, were enacted, and that the act of June 30, 1885, is a valid law.

It follows, that the demurrer to the plea was properly sustained, and that judgment was properly entered at the term beginning on the third Monday of March, 1886.

Plaintiffs in error claim that the evidence fails to show that an indictment was returned in open court by the grand jury. The *scire facias* alleges that the indictment was returned by the grand jury in open court. The original indictment was introduced in evidence by the State, and the file mark recites that it was filed in open court on October 24, 1884. Its introduction was not objected to. It is now objected, that the only legal evidence of the return of an indictment in open court is the record of the court showing such return, and that no such record was introduced in this case. Under the condition of the recognizance and under the law as settled by this court, it is unnecessary to aver or prove that an indictment was ever found to render the recognizors liable on a default by the principal. *Mooney* v. *The People,* 81 Ill. 134, and cases there cited.

It is also insisted that no record was shown of an order for recognizance. It was held in *Chumasero* v. *The People,* 18 Ill. 405, that there need be no order of court requiring or directing the party to enter into a recognizance; that the recognizance itself is evidence that the party was required to enter into it and did so. The recognizance states it was for the appearance of the principal to answer an indictment then pending against him for perjury. This implies that the requisite preliminaries with reference to the indictment were had. (*Shattuck* v. *The People,* 4 Scam. 477.) The parties to the recognizance are estopped by its recitals from raising any question as to the validity of the indictment.

The recognizance of record and judgment of forfeiture are competent and sufficient evidence, under appropriate averments in the *scire facias,* to authorize judgment of execution according to the form, force and effect of the recognizance, and in an action of debt to authorize judgment for the amount of the recognizance. *The People* v. *Witt,* 19 Ill. 169.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*