## R. W. BELL v. THE STATE.

### No. 4045.   Decided April 19, 1916.

**1.—Scire Facias—Bail Bond—Certiorari—Transcript.**

Upon trial of a scire facias case, where this court on appeal issued a certiorari requiring the clerk below to send up an additional transcript with the correct caption to the case, the organization of the grand jury, the filing of the indictment, etc., with which the clerk complied, the same will not be stricken out on motion of appellant.   Following General Bonding Co. v. State, 73 Texas Crim. Rep., 649.

**2.—Same—Affidavit—Practice on Appeal.**

Accompanying affidavits and original documents not filed in the lower court will not be considered on appeal.

**3.—Same—Bail Bond—Statutes Construed—Forfeiture—Procedure.**

In later years, the whole trend of legislation, as well as the decisions of this court and the Supreme Court is to get away from extremely technical and unimportant matters in cases of forfeitures of bail bonds, and to get to the real merits and not decide the case on purely immaterial technical points.   Following Hodges v. State, 73 Texas Crim. Rep., 634, and other cases.

**4.—Same—Judgment Nisi—Final Judgment—Defective Indictment.**

Appellant's contention that the judgment nisi and final judgment against him were void because the indictment in the case in which he gave bail bond was fatally defective can not be maintained.   Following Cox v. State, 25 Texas, 405, and other cases.

**5.—Same—Surety—Citation—Statutes Construed.**

Appellant's contention that no judgment on his bail bond could be taken against him, because none was taken against his sureties at the same time, the case being dismissed against them; that he was not served with citation, etc., can not be maintained, as the statute specifically so provides.

**6.—Same—Scire Facias—Judgment—Indictment—Void Judgment.**

Where defendant appealed from a judgment by default rendered against him in a scire facias case, and it appeared from the record that the case against the sureties was dismissed and judgment entered against him by default when for the first time he filed his motion for new trial, and among other things alleged that the court had granted his motion to quash the indictment in the case against him, and that this was admitted by the State's demurrer to said motion.   Held, that the judgment is void and must be reversed and remanded; although the defendant had failed to take any notice of the judgment nisi and had not pleaded thereto whatever, and that the case went over from term to term until final judgment by default was rendered against him.   Prendergast, Presiding Judge, dissenting.

Appeal from the District Court of Freestone.   Tried below before the Hon. A. M. Blackmon.

Appeal from a judgment final on the forfeiture of a bail bond in the sum of $5000.

The opinion states the case

*R. L. Williford, Edwards, Geppert & Wroe,* and *Boyd & Bell,* for appellant.—On question of void judgment: McLaren et al. v. State, 3 Texas Crim. App., 680; McDonough v. State, 19 Texas, 293; Mitchell v. Runkle et al., 25 Texas, 132; Wilkins v. State, 15 Texas Crim. App., 420.

*C. C. McDonald,* Assistant Attorney General; *Lex Smith,* County Attorney; *James McIntosh, Callicutt & Johnson,* for the State.

PRENDERGAST, PRESIDING JUDGE.—This is an appeal by the original defendant, being the principal in a *scire facias* case. The record is quite voluminous—entirely too much so. The material questions are few. After the transcript reached this court motions galore were filed in this court. Accompanying them were affidavits and original documents not filed in the lower court. We think it unnecessary to even state these matters.

This court issued a certiorari to the district clerk, requiring him to send up an additional transcript with a correct caption to this case, the minutes of the court showing the organization and empaneling of the grand jury which preferred the original indictment and the return and filing thereof in court, with which he has complied.

Appellant has filed a motion, objecting and excepting to this court considering the various original matters filed in this court, and to that part of the clerk's return to the certiorari wherein he gives a copy of the minutes of the organization of the grand jury which preferred the indictment and the minutes showing the return to and filing of said indictment in said court.

We have considered all the motions. We deem it unnecessary to discuss the various matters raised by them, or any of them. We, of course, can not, and will not, consider the said original papers not filed in the court below. We will not strike out the corrected caption, nor the minutes of the court showing the organization of the grand jury which found the indictment, nor the minutes showing its proper presentation and filing in the lower court. (General Bonding Co. v. State, 73 Texas Crim. Rep., 649.) We regard none of said motions in this court of any controlling or material effect on the real merits of this case. All these matters being brushed aside, we will go to the real issues and merits.

The record which we are authorized to consider, and, do consider, clearly shows that at the September term, 1913, of the District Court of Freestone County, a proper grand jury was duly empaneled and sworn, and that on September 11th it returned against appellant an indictment in three counts: the first charging rape upon his daughter by force, threats, etc.; the others, incest with his daughter by having sexual intercourse with her. The indictment was defective in that it

alleged that it was the grand jury of Limestone and not Freestone County acting, and the rape is charged to have been committed in Limestone, but the incest committed in Freestone County. That appellant was properly arrested and gave on the next day a bail bond, which is in strict accordance with the statute, in the sum of $5000, signed by himself and several sureties. That later, at that term, he filed a motion to quash said indictment on various grounds based upon the indictment stating that it was the Limestone County grand jury, and not the Freestone, which preferred the indictment. At the next term appellant failed to appear, and has never since personally appeared. Thereupon judgment nisi was rendered and entered against him· and all of his sureties on his said bail bond. His sureties were duly cited and answered, undertaking to avoid any final judgment against *them* on various grounds, among others, that said bond was void, because based on an invalid indictment, and because the court had quashed that indictment on appellant's said motion to quash it. The appellant did not then himself file any defense whatever to said nisi judgment. At the December term following another judgment, which is called an interlocutory judgment, purporting to be on its face a final judgment against him, was rendered. That judgment was not a final judgment, because it made no disposition of the sureties who were parties to the cause. But one final judgment can be rendered. He still failed to make any defense. At the next term, on February 14, 1916, the scire facias case was again regularly called for trial; whereupon, the State dismissed as to all of said sureties and asked a final judgment by default against appellant, which was then and there rendered by the court. The next day his attorneys, for him, filed his motion for a new trial. All these matters herein just above recited appear fully by appellant's said motion, which is the basis of this whole appeal. The State filed numerous demurrers to appellant's motion for a new trial. The court heard the matter and sustained several of the State's demurrers, overruled others and entered a final judgment overruling appellant's said motion and denying him a new trial, to which he excepted and gave proper notice of appeal to this court and assigns several claimed errors, which, he contends, entitle him to a reversal.

It is unnecessary to discuss severally appellant's assignments of error. We have considered them all. However, we will decide the material questions raised, which will have the effect to decide the whole case.

In the last few years, in several cases, we have had occasion to thoroughly investigate the law pertaining to the forfeiture of bail bonds. Among these cases are Hodges v. State, 73 Texas Crim. Rep., 638; General Bonding, etc., Co. v. State, 73 Texas Crim. Rep., 649, and Hodges v. State, 73 Texas Crim. Rep., 634, which were companion cases. In the Hodges case, 73 Texas Crim. Rep., 634, and in other cases which is applicable here, we said: "Our statutes prescribing the requisites of bail bonds and recognizances, and regulating and prescribing the procedure for the forfeiture thereof, are so clear, plain, full and unambiguous that they need no construction by this court. They construe

themselves. There are so many apparent, if not real, conflicts in the decisions of the courts on the subject that the safest, if not the only safe way, for the lower courts to proceed is to follow the said statutes. Prior to recent years the tendency of the decisions of the court was to attach undue importance to each and every one of these proceedings, practically requiring that every 't' should be crossed and every 'i' dotted; otherwise to hold the proceedings fatally defective and result in reversals. But in later years the whole trend of legislation, as well as the decisions of this court and the Supreme Court, is to get away from such extremely technical and unimportant matters, and, instead, to get to the real merits and substantial matters, and intent of the Legislature in the enactment of the law, and decide the cases on their true and real merits and not on purely immaterial technical points."

Appellant's contention that the judgment nisi and final judgment against him are void because the indictment in the case in which he gave bail bond was fatally defective can not be maintained, as has many times been decided by this court and other courts. It is unnecessary to discuss this question or the cases so declaring the law. Branch's Crim. Law, p. 67, and cases cited by him; Cox v. State, 25 Texas, 404; Rhodius v. State, 37 Texas, 165; Angell v. State, 37 Texas, 357; Ake v. State, 41 Texas, 166; Smalley v. State, 3 Texas Crim. App., 202; Hester v. State, 15 Texas Crim. App., 418; Jones v. State, 15 Texas Crim. App., 82; Martin v. State, 16 Texas Crim. App., 265; Lee v. State, 25 Texas Crim. App., 331; Shrader v. State, 30 Texas, 387; U. S. v. Evans, 2 Fed. Rep., 147; U. S. v. Reese, 4 Sawy., 629; State v. Weaver, 18 Ala., 293; Williams v. State, 20 Ala., 63; Reeve v. State, 34 Ark., 610; Dilly v. State, 2 Ida., 1012; Kepley v. State, 123 Ill., 367; Poston v. State, 63 Mo., 521; Morgan v. State, 124 Mo., 467; Livingston v. State, 117 Mo., 627.

Appellant's contention that no judgment on his bail bond could be taken against him, because (1) none was taken against his sureties at the same time, but instead the State's case against them as sureties was dismissed, and (2) he was not served with citation or any notice that either the judgment nisi or interlocutory judgment or the final judgment would be taken against him, can not be maintained. The statute itself is specifically against him as well as general principles. In the first place, it would be against all principles to hold that a principal in any obligation could successfully contend that no judgment could be rendered against him unless at the same time, in the same proceeding, a judgment should also be taken against his sureties. One simple illustration is sufficient. Suppose A should execute to B his promissory note for $5000, and should get C, D and E to sign as his personal sureties. Upon maturity and failure to pay, B, the payee, should sue him and his sureties on the note. Service might not be had upon some of the sureties, and some or all of them might be dead, or all of them insolvent, or as for that matter if the owner of the note should desire no judgment against the sureties, or for any other reason he wanted to hold the principal alone liable, no one would contend that

the principal maker of the note who owed it as his debt could claim that no judgment could be rendered against him, unless at the same time judgment should be rendered against his sureties. He would have no recourse on them whatever. There would be no reason why as to him they should be made parties, or a judgment should be rendered against them. That in effect is this case.

But, in this scire facias proceeding, the statute itself is plain and unequivocally against him. Article 488, C. C. P., provides that when a defendant is bound by bail bond to appear at any term of court and fails to do so on the day the criminal docket is taken up, or any subsequent day, when his case comes up for trial, a forfeiture of "his bond *shall* be taken." The next article specifically provides the manner of taking this judgment nisi, and says: *"judgment shall be entered that the State of Texas recover of the defendant the amount of money in which he is bound,* and of his sureties, the amount of money in which they are respectively bound," etc., clearly requiring that a judgment *shall be taken against him* on his bail bond. That it may also be taken against his sureties would make it none the less necessary that judgment shall be rendered against him. The next article prescribes that citation shall issue to the sureties only, not to the defendant. That article expressly states: *"But it shall not be necessary to give notice to the defendant."* The reason no notice or citation is to be issued to him but to his sureties only, is clear and certain. He is a party to the whole proceeding from start to finish by his mere signing of the bail bond. His sureties are not, unless they are cited, because the statute is to that effect. Besides, when a defendant wilfully forfeits his bond he is, or becomes, a fugitive, and it is contemplated in law that no citation can be served upon him, because he can not be found. Then the statute prescribed that the sureties can answer at the next term and show cause why the defendant did not appear so as to avoid any judgment against *them.* Various things would exempt them from liability, as has many times been held by this court, which would not affect the defendant himself. Article 500 states what causes and no others will exonerate the defendant or his sureties upon the forfeiture taken. It is unnecessary to enumerate them, but in the first subdivision it is expressly prescribed that if the bond be valid and binding as to the principal and one or more of his sureties, they shall not be exonerated from liability because of it being invalid as to another surety or sureties. That if it be invalid and not binding as to the principal, each of the sureties shall be exonerated from liability. Then it expressly enacts: *"If it be valid and binding as to the principal, but not so as to the sureties, the principal shall not be exonerated, but the sureties shall be."* The following articles then provide that if after the sureties have been cited, they fail to answer, and if the defendant fails to answer within the time limit for answering—the next term of court—the court shall enter final judgment by default as in other civil actions. It is the law, and the uniform practice, that if one party to an action answers and another does not, judgment by default is entered against the defaulting party, and if the answering

party is then dismissed, final judgment against the defaulting party shall be rendered.

The *scire facias* statutes were substantially complied with in every particular in this case. The judgment nisi against appellant was rendered March 9, 1914. He had till the next term to show cause why a final judgment should not be rendered against him, but he made no answer and so showing whatever within that time. His sureties did answer and undertook to show good cause why judgment should not be rendered against *them*, but they did so for themselves only, not for him. Then the case went over to another term, and on December 20, 1915, at that term another judgment by default was rendered against him. That was not final, because the sureties were not disposed of by it. He still made no answer, and in no way attempted to show why final judgment should not be rendered against him. The case went over another term of the court, and till February 14, 1916, when final judgment by default was rendered against him, the State at that time dismissing as to the sureties. He had had from March 9, 1914, to February 14, 1916,—nearly two years—to answer, but filed no answer whatever. Then, on the next day, he quickly filed a motion to set aside the said final judgment against him.

In his said motion, he set up many grounds which he claimed entitled him to a new trial, but the only ground which would present any merit is that he was exonerated from liability, because the court, in September, 1913, had granted his motion to quash, and had quashed, the indictment against him. The demurrers of the State in law admit the truth of that allegation, and we must take it on the face of the pleadings that that ground of his motion was true. The motion itself alleges that the court entered no judgment quashing the indictment. He in no way in his said motion gave any reason or excuse, or pretended to give any, why he did not set up before the final judgment was rendered against him the fact, if so, that the court had quashed the said indictment. Nor did he allege in any way in his said motion that the said judgment against him was obtained by mistake, accident or fraud of the State, nor that it resulted from mistake, accident or fraud by the State. The State's demurrers to his said motion specifically challenged the sufficiency of it on these grounds. It is true the State further in its answer specially denies that the court ever quashed the indictment or entered any order on the docket or minutes quashing it, and sets up as a fact that the indictment was never quashed, but in passing on the demurrers, neither this, nor the lower court, can consider such allegations. This presents the only serious question in the case.

The civil courts have clearly established the following rules by a great many decisions to this effect; that in order to set aside a final judgment by default, two things are positively required: (1) that the mover has a complete defense to the plaintiff's cause of action; and (2) he must show a valid excuse for failure to plead his defense in time and before final judgment. See authorities collated in 11 Ency. Dig.

of Texas Reports, p. 296 et seq., and those cited in the State's brief. On the face of appellant's motion, as stated, he set up what would have been a defense to any judgment against him as raised by the demurrers. The court sustained the State's demurrers to his motion. He did not ask leave to amend, nor amend, to cover the point, but instead, it seems, relied on his pleading as it was, without attempting to allege any excuse whatever why he had failed to answer in time. The appellant, as shown above, had from March 9, 1914, to February 14, 1916, nearly two years, to file his answer in defense. He did not do so. He waited until after final judgment against him, and then sought to have the judgment against him set aside, without in any way attempting to excuse his failure to answer. And he could have done this without surrendering and being personally present; he could have done so, although still a fugitive from justice.

Without any discussion of the question, this writer is of the opinion that the appellant had his day in court, and by his failure to answer setting up his said defense, he in effect waived it, and in not setting up in his said motion for a new trial any excuse for his failure to answer, that the judgment should be affirmed.

But my associates have reached the conclusion that the final judgment, under the appellant's allegations that the indictment had been quashed being admitted by the State's demurrers, is void, and that the cause should be reversed in order that the court below may try that question of fact. The judgment is, therefore, reversed and the cause remanded.

*Reversed and remanded.*

[Rehearing denied May 31, 1916.—Reporter.]