# THE PEOPLE *ex rel.* JOHN A. JAMESON

*v.*

# THE AUDITOR OF PUBLIC ACCOUNTS.

SALARY *of judges of the superior court of Cook county—from what time new salary commenced.* Under the present constitution, the judges of the courts of record in Cook county were to receive the same compensation provided for by the laws in force at the adoption of that instrument until after the adjournment of the first session of the general assembly after the same had been adopted, which was from the State $1000, from Cook county $1500, and judge's fees. After the adjournment of the first session of the general assembly, the State was required to pay the judges of the superior court of Cook county the same salary as was paid to circuit judges, which was $3000 per annum, payable quarterly. The first legislature convened January 4, 1871, and on April 17, 1871, adjourned, to meet again on November 15, 1871. Between the two last named days, two special sessions were called by the Governor, at both of which the legislature adjourned *sine die.* On November 15, 1871, it again convened, and continued in session until

April 12, 1872, when it adjourned without day: *Held*, that the salary of $3000 for the judges of the superior court to be paid by the State did not take effect until after April 12, 1872, and that prior to that time they could only receive the compensation provided by the laws on the subject in force at the adoption of the constitution—that day being the adjournment of the first general assembly, within the meaning of the constitutional provision.

This was an application for a *mandamus*, as stated in the opinion of the court. The opinion sets out the facts alleged in the petition.

It was stipulated and agreed by the auditor of public accounts that the facts were truly stated in the petition; and notice of the application for and the issue and service of the alternative writ were waived, and it was agreed that a peremptory writ might be awarded or refused upon the petition according to the law applicable to the facts stated.

Mr. W. C. GOUDY, for the relator.

Mr. WASHINGTON BUSHNELL, Attorney General, for the Auditor.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an application for a *mandamus* to the Auditor of Public Accounts to issue a warrant upon the State Treasurer for the amount claimed to be due to the relator on his salary as judge of the superior court of Cook county, computing the same at the rate of $3000 per annum, from the 8th day of August, 1870, to the 12th day of April, 1872, or for such part of said time as may be found due.

It is provided in section 25, article 6, of the constitution, that the judges of the superior court of Cook county shall receive the same salaries, payable out of the State treasury, as is or may be paid from said treasury to the circuit judges of the State, and such further compensation to be paid by the county of Cook as is or may be provided by law.

.Section 16, article 6, fixes the salaries of circuit judges of the State, from and after the adoption of the constitution, at $3000 per annum, payable quarterly, until otherwise provided by law.

. In the schedule, section 21, it is provided that—

"The judges of all the courts of record in Cook county shall, in lieu of any salary provided for in this constitution, receive the compensation now provided by law until the adjournment of the first session of the general assembly after the adoption .of this constitution."

The compensation then provided by law for the judges of the superior court, that being a court of record in Cook county, was derived from three sources—

*First*—From the State, $1000.

*Second*—From Cook county, $1500.

*Third*—From judge's fees.

The constitution was adopted in July and went into force on the 8th day of August, 1870. The first session thereafter, as fixed by the constitution, was to be held, and it did commence, on the first Monday of January, 1871. During that session, the. legislature passed an act, which was approved April 13, 1871, and took effect July 1, 1871, which provided that the judges of the circuit and superior courts of Cook county should each be paid by the county, in addition to the salaries which may be paid to them from the State treasury, such further compensation as would make their respective salaries amount to the sum of $7000.

The time during which the judges of the superior court were to receive the compensation provided by law at the time the constitution was adopted, expired, and they became entitled to a salary from the State, at the rate of $3000 per annum, at the adjournment of the first session of the general assembly after the adoption of the constitution. And the question in controversy is, at what time did the first session

of the general assembly after the adoption of the constitution adjourn, within the meaning of section 21 of the schedule?

The facts set up in the petition show that the legislature commenced its first session on the 4th of January, 1871, and on the 17th day of April, of that year, after winding up the business in the way usual before an adjournment *sine die*, in pursuance of a resolution adopted before, both houses were declared by the respective presiding officers adjourned to the 15th of November, 1871; that the Governor of the State convened the general assembly, for certain purposes specified in his proclamation, in June, 1871, and among them was the subject of fees and salaries; and after disposing of the business for which the legislature was assembled, both houses adjourned in the same month without day; that afterwards the general assembly was by the Governor again convened on the 13th day of October, 1871, to consider certain subjects mentioned in his proclamation, and after disposing of the business presented by the Governor, the general assembly during the same month adjourned without day. At the time before fixed, on the 15th day of November, 1871, the general assembly reassembled, and continued to transact business until April 12, 1872, when it adjourned without day.

It is claimed by the counsel for the relator that there were here four sessions of the twenty-seventh general assembly— first, the regular one, at the time fixed by the constitution; second, a special one, in June; third, a special one, in October; and fourth, an adjourned one, in November and following months; and it is insisted that the adjournment on' April 17, 1871, was the one contemplated by section 21 of the schedule, or if not, that there certainly was a complete session in June, and one at which action on this subject could have been taken, because embraced within the call; that that would constitute the first completed session in every sense, terminated by an adjournment *sine die*, and that the adjournment of that session at least would be the time fixed by section 21 of the schedule.

In support of this view, it is said that the adjournment of the first *general assembly* is not referred to, but the adjournment of the first *session* of that assembly; and that it was contemplated that there could be more than one session of the same general assembly, because it is designated as the *first*. But we do not apprehend that any special significance in this respect is to be attached to the use of the particular terms employed as denoting anything more than the first regular session of the general assembly after the adoption of the constitution. The constitution did away prospectively with the fee system, from which the greater part of the compensation to the Cook county judges is said to have been derived, and authorized provision to be made by law for the payment of an additional sum to that of a salary of a circuit judge by the county of Cook. And it was evidently considered just to continue the fee system until the legislature could meet and pass a law for the payment of the additional compensation by the county.

As a matter of convenience, the adjournment of the first session was fixed on as the time when the compensation then allowed by law should cease, presuming that the legislature would by that time have provided for the further compensation. And as it was uncertain at what particular time before the close of the session the passage of the contemplated law could be secured, we think it was the intent of this section of the schedule, without regard to special or adjourned sessions, to allow the opportunity for the entire period of the regular session and until the time of its final adjournment for the passage of such a law, and that the then existing compensation provided by law was to continue until that time.

Bouvier, in his Law Dictionary, thus defines "session"— "The time during which a legislative body, a court or other assembly sits for the transaction of business; as a session of congress, which commences on the day appointed by the constitution and ends when congress finally adjourns before the commencement of the next session; the session of a court,

which commences at the day appointed by law and ends when the court finally rises."

We are of opinion that the term "session" was used in this section of the schedule in the sense of the instances put by Bouvier, and that "the adjournment of the first session of the general assembly after the adoption of this constitution," within the intent and meaning of that section, was the final adjournment on the 12th day of April, 1872, of the regular session, which commenced on the day appointed by the constitution—the 4th day of January, 1871.

It then follows, in the view of a majority of the court, that, on the facts presented in the petition, the relator shows no right to the relief claimed, and the writ of *mandamus* must be refused.

*Mandamus refused.*