THE PEOPLE ex rel. George W. Herdman et al.

v.

JAMES A. ROSE, Secretary of State.

*Filed at Mt. Vernon May 7, 1897.*

1. CONSTITUTIONAL LAW—*judicial circuits may be changed only at session of General Assembly next preceding election of circuit judges.* Judicial circuits formed under section 15 of article 6 of the constitution of 1870, may be changed only at the session of the General Assembly next preceding the election of circuit judges.

2. SAME—*what is the "session next preceding" the election of circuit judges.* The session of the General Assembly contemplated by section 13 of article 6 of the constitution of 1870 is the one which convenes next preceding the election of circuit judges, without regard to whether such session is completed before the time prescribed for such election or not.

3. SAME—*act changing judicial circuits is an exception to the general provision as to when laws take effect.* An act passed under the constitutional provision for changing judicial circuits is an exception to the general provision of section 13, article 4, of the constitution, that no act "shall take effect until after the first of July next after its passage," unless passed with an emergency clause by a two-thirds vote.

4. SAME—*act of 1897 changing judicial circuits is constitutional.* The act of 1897, "to divide the State of Illinois, exclusive of Cook county, into judicial circuits," is constitutional, and became operative and in force upon approval by the Governor.

5. COURTS—*act of 1897 changing judicial circuits does not affect tenure of office of present circuit judges.* The act of 1897 changing the judicial circuits does not affect the tenure of office of present circuit judges, who may continue to act as judges in the circuits for which they were elected until the expiration of their present terms of office.

ORIGINAL petition for *mandamus.*

MOLONEY & SCOFIELD, for relators:

The provision of section 13, article 4, of the constitution, emphatically declares that no act shall take effect until the first day of July after its passage, unless in case of an emergency (which emergency shall be expressed in the preamble or body of the act) the General Assembly shall, by a vote of two-thirds of all the members elected to each house, otherwise direct. This is a positive provision of the constitution, and cannot, for any purpose, be construed out of existence. It is the supreme law of the land, and can only be changed by an amendment to the constitution.

An emergency cannot exist by implication or argument based upon the necessities of the case, but must be contained in either the preamble or body of the act. *Iroquois County* v. *Keady,* 34 Ill. 293.

In order to take the act out of the constitutional provision, the legislature must direct that the act, as a whole, shall take effect at a different time. And it is not sufficient that certain parts of it might bear the construction which would, taken separately, give those parts effect at an earlier period. Such direction must be in a clear, distinct and unequivocal provision, and cannot be helped out by any sort of intendment or implication. *Wheeler* v. *Chubbuck,* 16 Ill. 361.

A statute passed to take effect at a future day must be understood as speaking from the time it goes into operation, and not from the time of its passage. Before the time it goes into operation no rights may be acquired under it, and no one is bound to regulate his conduct

according to its terms. It is equivalent to a legislative declaration that the statute shall have no effect until a designated day. *People* v. *Campbell,* 3 Gilm. 466; *Wheeler* v. *Chubbuck,* 16 Ill. 36; *People* v. *Bangs,* 24 id. 86; *Price* v. *Hopkins,* 13 Mich. 316; *Rice* v. *Duddeman,* 10 id. 125; *Davenport* v. *Railroad Co.* 37 Iowa, 624; *Bennett* v. *Bavard,* 6 id. 82; *Iroquois County* v. *Keady,* 34 Ill. 293; *Charlews* v. *Iamberson,* 1 Iowa, 436; *Railroad Co.* v. *Barbee,* 74 Ind. 169; *Commonwealth* v. *Fowler,* 10 Mass. 290; *State* v. *Mounts,* 36 W. Va. 179; *Water Co.* v. *Kron,* 74 Cal. 222; Cooley's Const. Lim. 188, 189.

E. C. AKIN, Attorney General, (D. C. HAGLE and C. A. HILL, of counsel,) for respondent:

An act of the legislature without an emergency clause, when approved by the Governor, becomes a law immediately upon its approval. *People* v. *Inglis,* 161 Ill. 256.

The constitution of 1870 says that the judicial election shall be held on the first Monday of June. The act of 1897 says that such election shall be held in and for the new circuits there created. If that act is now an existing law, then the repealing clause of that act became operative as soon as the act was signed by the Governor. But it is wholly immaterial whether the old act is repealed expressly or by implication. In either case it is the act itself, and not anything that is done under that act, that operates as a repeal. The general election laws furnish all the machinery for that election, and they are as applicable to the new circuits as to the old.

The clause in section 13, article 6, of the constitution, that "new circuits may be formed and the boundaries of circuits may be changed by the General Assembly at its session next preceding the election of circuit judges, but at no other time," is a restriction on the time when the legislature may change the boundaries of circuits formed under the 15th section of the same article after they have been once established in lieu of the former system, but not before. *People* v. *Wall,* 88 Ill. 75.

The act of 1897 was passed by the proper General Assembly, and such act, even without the emergency clause, immediately upon its approval, repealed the old Apportionment act.

Section 4, chapter 131, of the Revised Statutes of 1874, provides: "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not as to any   *   *   *   right accrued or claim arising under the former law,   *   *   *   or any right accrued or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding.   *   *   *   This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." Under this broad provision of the statute, if the several judges have the right, by virtue of their election and qualification, to act as judges and sign papers and documents as judges of a certain judicial circuit, that right is still continued, and the old law is only so far repealed as to provide for the election of new judges in new districts under the new Apportionment act.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The relators, George W. Herdman, Owen P. Thompson and Timothy Beach, presented to this court their petition for a writ of *mandamus*, directed to the defendant, James A. Rose, Secretary of State of this State, commanding him forthwith to receive and file a certificate of nomination of the relators as candidates for the office of judges of the seventh judicial circuit of this State, as created by the Judicial Apportionment act of 1877, and to certify to the county clerks composing said circuit under said act the names of the relators as candidates for said office. Leave having been given to file the petition, the defend-

ant entered his appearance, waiving service of process, and the cause is submitted for final determination upon the stipulation of the parties filed in the cause.

The petition alleges that the relators, who are residents of the seventh judicial circuit as constituted by the act of 1877, were duly nominated at a regular convention of delegates representing the democratic party of said judicial circuit, and that they presented to the defendant, the Secretary of State, a certificate of such nomination, with the request to file the same, which the defendant refused to do. The defendant admits the averments of the petition, and by the stipulation referred to it is agreed that the General Assembly which convened in January, 1897, duly passed an act entitled "An act to divide the State of Illinois, exclusive of the county of Cook, into judicial circuits," (a copy whereof is attached to the stipulation,) making a new apportionment, and that on April 23, 1897, the Governor approved and signed the same. The question submitted is, whether the approaching judicial election to be held on June 7, 1897, shall be held in the new circuits as formed by said act of 1897, or in the old circuits as constituted in the act of 1877.

The act passed by the General Assembly and approved by the Governor April 23, 1897, did not recite that any emergency existed, as provided in section 13 of article 4 of the constitution, and the claims of the relators are, that it would therefore not go into effect until July 1, 1897, under the provisions of that section; that, not being in force at the time of the election on June 7, 1897, it is unconstitutional, and that, even if not in violation of the constitution, such election cannot be held under it before the time when it will go into effect.

By section 14 of article 6 of the constitution the time for the election of judges of the circuit courts is fixed on the first Monday in June, 1873, and every six years thereafter, and the provisions under which the General Assembly may form new circuits and change the bound-

aries of circuits are contained in sections 13 and 15 of the same article.   They are as follows:

"Sec. 13.  The State, exclusive of the county of Cook and other counties having a population of 100,000, shall be divided into judicial circuits prior to the expiration of the terms of office of the present judges of the circuit courts.  Such circuits shall be formed of contiguous counties, in as nearly compact form and as nearly equal as circumstances will permit, having due regard to business, territory and population, and shall not exceed in number one circuit for every 100,000 of population in the State. One judge shall be elected for each of said circuits by the electors thereof.  New circuits may be formed and the boundaries of circuits changed by the General Assembly at its session next preceding the election for circuit judges, but at no other time :  *Provided,* that the circuits may be equalized or changed at the first session of the General Assembly after the adoption of this constitution. The creation, alteration or change of any circuit shall not affect the tenure of office of any judge.  Whenever the business of the circuit court of any one or of two or more contiguous counties containing a population exceeding 50,000 shall occupy nine months of the year, the General Assembly may make of such county or counties a separate circuit.  Whenever additional circuits are created the foregoing limitations shall be observed.

"Sec. 15.  The General Assembly may divide the State into judicial circuits of greater population and territory in lieu of the circuit provided for in section 13 of this article, and provide for the election therein, severally, by the electors thereof, by general ticket, of not exceeding four judges, who shall hold the circuit courts in the circuit for which they shall be elected, in such manner as may be provided by law."

In the case of *People* v. *Wall,* 88 Ill. 75, it was held that the General Assembly might exercise its discretionary power to adopt the system for judicial circuits provided

for in section 15 in lieu of the prior circuits, at any time, but with reference to the change of circuits after such system should be adopted it was said (p. 79): "Although not involved in this decision, we may express the opinion we entertain that the clause referred to in section 13 might well be regarded as a restriction as to the time when the legislature might change the boundaries of circuits formed under the 15th section after they shall have been once established in lieu of the former system, but not before." We are still of the same opinion there expressed, and the system provided by section 15 having been established, the provision that new circuits may be formed and the boundaries may be changed by the General Assembly at its session next preceding the election of the circuit judges, but at no other times, both declares the power to make the changes named in the act of 1897 and restricts the exercise of such power to the session of the General Assembly next preceding the election for circuit judges. Counsel are also agreed upon this question, and the first subject of discussion is, what session of the General Assembly is thereby designated.

Counsel for the relators insist that the General Assembly which convened in January, 1895, could have made a re-apportionment under this section, and that such session was the one intended by the constitution. In support of this argument the case of *People ex rel.* v. *Auditor of Public Accounts*, 64 Ill. 82, where the definition of the word "session" given by Bouvier in his Law Dictionary is quoted and approved, is relied upon. The definition is as follows: "The time during which the legislative body and court, or other assembly, sits for the transaction of business, as the session of Congress which commences on the day appointed by the constitution and ends when Congress finally adjourns, before the commencement of the next session; the session of a court which commences at the day appointed by law and ends when the court finally rises." Under this definition it is urged that the session

next preceding the election of circuit judges is a finished and completed session, and, inasmuch as the court cannot say when the present session will end and the General Assembly may not finally adjourn before the election on June 7 for circuit judges, it is not to be regarded as the session next preceding such election. It is expressly admitted, however, that in case it should so adjourn it will then be the session next preceding the election and fully answer the description of the constitution. If that should prove true, then the positive prohibition of the constitution that changes should not be made at any other session would prevent the exercise of the power by the General Assembly of 1895. This is undeniable, and if the position of counsel should be conceded and such adjournment should take place, any act that might have been passed at the session of 1895 would be invalid, whether the present legislature should pass any act or not. If it should adjourn before the election without having acted at all, it would be the only body authorized by the constitution to take any action at all upon the subject. It is also admitted in argument that if the present General Assembly had passed the act now in question, with an emergency clause, by a two-thirds vote, it would be a valid exercise of the power conferred by the constitution. The argument upon these questions is inconsistent and irreconcilable. If the present General Assembly had passed the act in question with an emergency clause, and should continue its session beyond June 7, then, under the other branch of the argument, it would not be the session next preceding the election. The fact that there is or is not in the preamble or body of the act a recital of an emergency would make no difference in determining what session is the one next preceding the coming election. We think that the position taken by counsel is clearly untenable. The framers of the constitution could not have intended two different sessions of the General Assembly as the preceding one, depending upon the length of a

session. The present session precedes the coming election, although it may not be completed at the time of the election. And this was the view taken in *Kepley* v. *People*, 123 Ill. 367. In that case a like provision in section 14 of the same article of the constitution, relating to changes in the times of holding court, to that contained in section 13 was under consideration, and it was held that the General Assembly which was in session in 1885 was the one preceding the election of June, 1885. There can be no difference in that respect in the use of the words employed in the different sections.

It is next insisted by counsel for relators, that if the General Assembly had power to enact the law of April 23, 1897, yet it would not go into effect, without an emergency clause, until July 1, 1897, and that the election could not be held under it in June. Upon this question the Attorney General, as counsel for the defendant, contends that, although the law may not be in force, such election may be held under its provisions, and he cites the case of *People* v. *Inglis*, 161 Ill. 256, to sustain his claim. That case does not furnish a parallel to this. The Governor, who exercised the power of appointment of trustees of the Normal School, was an officer of the State, invested by the constitution with the power of appointment, which he exercised. His office was created by the constitution, and his power of appointment did not depend upon the law or upon its being in force at the time. It was there said that the trustees, whose power arose out of the act not yet in force, could do nothing to carry out its provisions until the law should take effect. In this case the law creates new districts and a new electorate, upon which the power of choosing judges in the respective circuits is conferred. The circuits in which the elections are to occur have no existence, except as they are created by the act. The only purpose of the law is to make new circuits, and to make it effective for that purpose is to make it effective for the entire object of the

law.   Unless the act is in force the new circuits in which conventions can be held and nominations made, and elections called and held, can have no existence.

The material question then is, whether the act of 1897 went into effect upon its approval or will go into effect July 1, 1897.   Having decided that the present General Assembly is the one designated by the constitution to exercise the power of changing the circuits, it is clear that the framers of the constitution intended that the exercise of the power should be effective.   The constitution is therefore to be construed so as to carry out that intention, if possible.   By section 13 under consideration it is provided that the creation, alteration or change of any circuit shall not affect the tenure of office of any judge, and if judges should be elected at the coming election in the circuit as constituted by the act of 1877, they would continue to act as judges in the circuits in which they are elected until the expiration of their terms.   This was the rule under the constitution of 1848, and it was decided that the legislature had no right to remove a circuit judge from his office by creating a new circuit and taking from him the territory which constituted it.   (*People ex rel.* v. *Dubois,* 23 Ill. 547; *People ex rel.* v. *Bangs,* 24 id. 184.)   The effect would be, that the law enacted in accordance with the provisions of the constitution would be inoperative.   Whatever necessities may have existed for the change in the circuits, such change could not be effected, under the contention of counsel for relators, except by an act passed by a two-thirds vote of the General Assembly and containing an emergency clause.   This would be to defeat the purpose of the section under consideration, wherein careful provision was made for such change, unless the act should be adopted by a two-thirds vote.   That this is not the meaning of the constitution is clearly apparent.   The words used import a majority of each house, and not two-thirds of all the members elect. Obviously, the intent was that an act passed by a major-

ity should be operative, and if a greater proportion had been required it would certainly have been specified. That it was intended to be operative at the election is plain from the prohibition against any other General Assembly enacting such a law. It would be absurd to say that it was meant that the General Assembly preceding such election should arrange the circuits to meet the conditions as to population and business existing six years ahead. The effect of holding that the law would not be in force until July 1, 1897, would be to defeat that intent.

The constitution contains in section 13 of article 4 the provision, applicable to laws generally, that they shall not take effect until the first day of July next after their passage, unless in case of emergency expressed in the preamble or body of the act, when they may be passed by a vote of two-thirds of all the members elected to each house. In the particular instance of the law changing the circuits, which can only be enacted at the session preceding the first Monday of June, it was provided that a change might be made which, as we have seen, was intended to operate on such election in June. Now, it is a settled rule of construction that where there are two provisions, one of which is general and designed to apply to cases generally, and another is particular and relating only to one subject, the particular provision must prevail and it must be treated as an exception to the general provision. This rule is stated in Endlich on the Interpretation of Statutes, (sec. 399,) as follows: "In such cases the special provisions upon that particular subject indicate an intention that it is not to be included in the general provision, and the latter is held inapplicable to it, or, as is sometimes said, is controlled by the special provisions. Where, therefore, there is in the same statute a particular enactment and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken

to affect only such cases within its general language as are not within the provisions of the particular enactment. It follows, that where an act in one set of provisions gives specific and precise directions to do a particular thing, and in another set prohibits, in general terms, the doing of that which, in the broad sense of the words used in the latter, would cover the particular act authorized by the former, the more general provisions cannot be deemed to include the matters embraced in the more specific ones." *Chicago and Northwestern Railway Co.* v. *City of Chicago*, 148 Ill. 141.

Our conclusion is, that the particular provision that changes may be made in the circuits by the General Assembly at its session next preceding the election for circuit judges, which was plainly designed to be operative and in force at such election, must be deemed an exception to the general provision. The provision for such a change could only be effective as such an exception, and the law was in force on its approval. The enactment of the law was a legitimate exercise of the power conferred upon the General Assembly, and it cannot be held to be unconstitutional. We do not see that this construction will result in any difficulty or confusion between the time that the act of April 23, 1897, went into effect and the election and qualification of the judges elected in the new circuits under this provision. We have already referred to the provision that the change shall not affect the tenure of office of any judge. They may continue to hold the circuit courts until the expiration of their present terms of office by the election and qualification of the new judges.

The writ of *mandamus* prayed for is denied.

*Mandamus denied.*