# State Board of Election Commissioners et al. v. Coleman et al.

(Decided June 20, 1930.)

J. W. CAMMACK, Attorney General; JAMES M. GILBERT, Assistant Attorney General; MARION RIDER and JOHN E. SHEPARD for appellants.

MANN & VINCENT and L. A. MORANCEY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Affirming in part and reversing in part.

At its 1930 session the General Assembly enacted Senate Bill No. 414, and which has not yet been printed. It contained no emergency clause, and under section 55 of our Constitution it did not take effect until 90 days after the adjournment of that body, which was on March 20, 1930, and the effective date of the act would be June 18, 1930. The title of the act, which will hereinafter be referred to as the new act, as well as its body, attempted to repeal and re-enact sections 1468, 1472, 1481, 1482, and 1483, of the 1922 and 1930 editions of Carroll's Kentucky Statutes, and to create and enact an independent section, designated therein as section 1483a, all of which pertained to the holding and conducting of both primary and general elections in this commonwealth. The newly enacted section 1468 prescribed that county court clerks should provide the ballot boxes for their respective counties, the expenses so incurred to be paid by the fiscal court of the county, instead of their provision by the sheriff as was prescribed by the old section 1468. The new section also provided for a differently constructed ballot box with additional locks and means of safety whereby the ballots as cast could be preserved until they were counted and certificates made of the election in the

manner provided for by the amended and re-enacted section 1482 in the new act.

Section 2 of the new act, and which was the amended section 1472 of the old act, made a change in the method of handling and depositing the ballots by the voters in the ballot box after he had stamped his ballot, and requiring that the box should be located in plain view of the officers of the election but not nearer to them than fifteen feet, (which was the same distance prescribed for the location of the voting booths), and that the voter, after stamping his ballot and folding it, should tear from it the secondary stub and himself deposit it in the ballot box in view of the officers, and which was in lieu of the officer depositing the ballot and tearing off the secondary stub as contained in the old section 1472 before it was so amended.

Section 3 of the new act only prescribed for the appointment of challengers and inspectors by the executive committees of political parties having candidates to be voted for; while section 4 of the new act, amending and re-enacting the old section 1482 of our Statutes, prescribed an entirely new method of counting the ballots and certifying the result of the election. Under the old section, the count was made by the officers of the election at the close of the polls with certain prescribed duties of such officers relating to the making of certificates, conveying the ballot boxes to the county court clerk, and others not necessary to mention. The section as amended by the new act prescribes, in substance, that the officers of the election at its close shall lock the vent-lid to the box (which is a prescribed covering for the aperture through which the ballots are deposited in the box) and return that key to the county court clerk with the box, and also the prescribed sealed envelop for unused ballot stubs, etc., as provided for in the old section to be delivered to the county court clerk who under the statute has a key to one of the locks to the ballot box lid, while the county election commissioners of the two dominant political parties each have one of the other two keys. The election commissioners, under the new act, are required to meet the first week day after the election at 10 o'clock a. m., and proceed to unlock the boxes and count the ballots and make the certification thereof, according to the form prescribed in the new act. Certain inspectors, attorneys, friends, and guardsmen, so to

speak, are also provided for by the new act in its section 5, and which is the amended and re-enacted section 1483.

Section 6 of the new act contains the entire newly enacted section 1483a, and it says:

"It is hereby made the duty of the state election commission to adopt and agree upon a uniform designed metal ballot box to be used in all the election precincts of this Commonwealth which shall conform to specifications set out in section 1468 herein. It shall be the duty of said state election commission to contract for the manufacture and construction of said boxes, including locks and keys therefor, and shall notify each county clerk of the adoption and specifications set out herein, giving him the price per box and the name and address of the contractor where said boxes may be secured, and it shall be the duty of each county clerk to procure said boxes from said contractor in sufficient number to accommodate all the precincts in his county. The county clerk shall be the custodian of said ballot boxes and shall exercise due diligence in caring for, and preserving said boxes, locks and keys."

The first of these consolidated equity actions was filed in the Franklin circuit court by appellee J. W. Harvey against the state board of election commissioners, as a citizen and taxpayer of the commonwealth and of Boyd county, Ky., and also as an unsuccessful bidder at the letting for the construction of the newly provided for ballot boxes, as prescribed in section 6 of the new act, and to be section 1483a of the Kentucky Statutes. Later the successful bidder at that letting was by amendment made a party defendant to that action, and it will hereinafter be referred to as the Harvey case. Later the appellee C. T. Coleman a citizen and taxpayer and resident in both the commonwealth and Franklin county, filed an action against J. B. Nash, county court clerk of Franklin county, and the successful bidder at the letting above mentioned, and which action we will hereinafter refer to as the Coleman case. They were later consolidated, followed by the rendition of the judgment in the Franklin circuit court that is questioned by this appeal.

The plaintiff in the Harvey case sought to enjoin the state board of election commissioners, and the successful bidder at the letting of the bid for the construction of the ballot boxes, from carrying out that contract upon the

two grounds that (a) plaintiff's bid was the cheaper of the two to the extent of some fifteen or twenty thousand dollars for the entire number of ballot boxes to be constructed thereunder, and that the election board abused its discretion in awarding the bid to the successful bidder; and (b) that the contract for the construction of the ballot boxes was invalid because made and executed before the new act took effect. There was no prayer for a mandatory order requiring the election board to accept plaintiff's bid. The plaintiff in the Coleman case prayed that the entire new act be declared invalid, null, and void as violative of sections 6 and 147 of our Constitution providing for the secrecy of the ballot, and which is necessarily confined to section 2 of the new act and constituting the future section 1472 of the Kentucky Statutes relating to the method of voting and the depositing of the ballot in the ballot boxes by the voter; it being claimed that the provisions in that section for the voter to deposit his ballot in the ballot box at least 15 feet away from the election officers prevents the latter from detecting fraud, and also that the section is invalid and for which reason it invalidates the entire act because it is therein provided that, if the voter should fail to detach from his ballot the secondary stub before depositing it in the ballot box, it would not disqualify that ballot, but that it should be counted in the final certification of the result of the election. It was also claimed in the Coleman case that the providing for the ballot boxes by the county court clerk would entail a useless expense on the county, not only because the entire act was invalid, but also because the Legislature had no right to provide for the creation of a debt against the counties for the purchase price of the newly arranged ballot boxes provided for by the new act, and perhaps for other reasons less meritorious.

In addition thereto, plaintiff in the Coleman case sought to enjoin the county court clerk, if the new act was held constitutional, from purchasing more than one ballot box for each voting precinct in primary as well as in general elections, since it was contended that section 1550-17, prescribing a separate ballot box for each political party entitled to participate in a primary election, was impliedly repealed by the new act, it being contended that the new act prescribed for only *one* box for each separate precinct in the county to be used in both primary and general elections. It was also prayed that the

county court clerk be enjoined from providing more than one set of three keys for the three locks to the lid of each ballot box, each key fitting the corresponding lock on each of the boxes; it being also alleged that the county court was threatening to purchase a set of three keys for each ballot box in the county.

Special and general demurrers were filed to the petition in each case, and, without waiving them, answers were filed denying the grounds for relief, and in that condition the order of consolidation was made and the consolidated cause was submitted to the court for trial, and it adjudged (1) that the contract enterd into with the successful bidder by the state election board for the construction of the ballot boxes provided for by the act was invalid because it was entered into before the act took effect and became a law, and its performance was enjoined; (2) that the entire section 2 of the new act was unconstitutional and invalid as violative of sections 6 and 147 supra of our Constitution, leaving intact the old section 1472, but that the remaining portion of the act was valid and the county court clerk was directed and required (3) to provide for the ballot boxes as specified by the new act including more than one box for each precinct if the clerk, within the exercise of his sound discretion and his knowledge of the number of voters therein, from having provided the ballots, deems it to be necessary for receiving the ballots cast at such precinct. It was further adjudged (4) that the new act impliedly repealed section 1550-17, supra, of our present Statutes, and it was also adjudged, and the county clerk was so directed (5) "to purchase locks for the ballot boxes heretofore referred to with combinations and keys so arranged that no key will unlock more than one of said locks on any of the ballot boxes purchased for Franklin County;" or, in other words, it was adjudged in subdivision 5, that the two election commissioners representing each of the dominant political parties in the county and the county court clerk, each of whom were to have a key to the locks fastening the lids to the ballot boxes, should have and retain one for each ballot box in the county instead of one key for a lock on each ballot box, and which embodied the construction put upon the new statute by the court. From that judgment defendants in the two consolidated actions prosecute this appeal, and the numerical divisions supra, of the judgment, each of

which is presented in this court for review, will be considered and disposed of in the order named.

1. The state board of election commissioners, shortly after the adjournment of the 1930 session of the General Assembly, advertised for bids for the construction of the character of ballot boxes provided for by the new act pursuant to the authority conferred upon it by the newly enacted section 1483a therein, and, after receiving bids, the board accepted that of the successful bidder and rejected the one made by plaintiff in the Harvey case, and followed its acceptance with entering into a contract with the successful bidder for the manufacture of the ballot boxes pursuant to his bid. It will therefore be perceived that the state election commissioners, in entering into that contract before the new act became law, i. e., before June 18, 1930, did so with no authority therefor at the time other than a mere potential one, although the contract created a binding obligation to take and pay for the required number of ballot boxes for each county by the fiscal court of the county whose county court clerk ordered them. In so entering into the contract, the state board of election commissioners discharged and performed their entire duties under that section of the new act and carried them into complete execution.

It would seem that it would require the citation of no adjudged cases to demonstrate that it would be incompetent for public officers to perform completed duties under a law that had no existence than prospective or potential. Until the time arrives for it to take effect as a controlling mandate of governmental policy, it necessarily could have no more force than if it had never been enacted. In other words, it requires no argument to show that a statute is not a governing law until it does take effect and necessarily nothing provided for in it may legally be done until it does so. Hence we read from the text in 36 Cyc. 1192, subd. C: "Until the time arrives when it is to take effect and be in force, a statute which has been passed by both houses of the legislature and approved by the executive officer has no force whatever for any purpose, and all acts purporting to have been done under it prior to that time are void." The case cited in note 7 in support of that text are Harrison v. Colgan, 148 Cal. 69, 82 P. 674; Santa Cruz Water Co. v. Kron, 74 Cal. 222, 15 P. 772; People v. Rose, 166 Ill. 422, 47 N. E. 64; Iroquois County v. Keady, 34 Ill. 293; State v. Bruno, 48 La. Ann.

1481, 21 So. 30; Price v. Hopkin, 13 Mich. 318; Johnson v. State, 35 Tex. Cr. R. 273, 33 S. W. 232; Cowen v. Withrow, 116 N. C. 771, 21 S. E. 676.

Almost numberless cases could be cited, many of which were decided by this court, to the effect that an act passed by the Legislature is of no force until it takes effect according to the provisions of the prevailing Constitution, or, as in some jurisdictions, is allowed according to its terms if the time is fixed therein. One of the most recent cases from this court so holding is Allen v. Commonwealth, 234 Ky. —, 27 S. W. (2d) —, decided June 17, 1930. But it is argued by counsel for appellants that this court, in the cases of Dixon v. Caudill, 143 Ky. 623, 136 S. W. 1043, and Walker v. Fox, 216 Ky. 33, 287 S. W. 228, held that an appointment to fill a vacancy in office before the vacancy occurred was valid, and that, by analogy, it would be competent to perform acts provided for by a duly passed statute, though not yet effective, before the effective date arrived; and from that conclusion it is insisted that subdivision 1 of the judgment appealed from is erroneous and should be reversed. We do not regard the principle announced in the two cited domestic cases as applicable to the question here involved. In each of them the power and authority to make the appointment was possessed by the appointing authority under effective and existing law at the time the vacancy was prospectively filled; but there was no existing law at the time the contract complained of herein was made and entered into, and which fact provides a most material and essential distinction between the principles of the cited cases and the instant one. In the one case the exercised power and authority already had been created when it was exercised, though to take effect in futuro; while in the other the *authority* would not be created or become existent until a future date. Also, the appointment in the one case might possibly be revoked before the future date for it to take effect and the appointee installed; but in any event no obligatory financial obligation was incurred, while in this case the contract for the manufacture of the boxes if binding, incurred an irrevocable financial obligation. It might be that preliminary and anticipatory steps looking to the carrying into execution of the provisions of a statute when it would become effective might be taken before the effective date, such as advertisement for bids, consideration of them, etc. But, whether so or not, such duties are,

as said, only preliminary ones and not the substantial and final ones to be performed under the prospective statute. We therefore conclude that subdivision 1 of the judgment appealed from was and is correct.

2. In rendering subdivision 2 of the judgment, the court did not assign any reasons therefor, except the general one that section 2 of the new act violated sections 6 and 147 of our Constitution. Section 6 says, "All elections shall be free and equal;" and section 147, in so far as applicable to this case, says, "All elections by the people shall be by secret official ballot." We are unable to see wherein section 2 of the involved statute in any manner controvenes section 6 of the Constitution, and it is equally difficult to discern wherein it invades the requirement of section 147 of that instrument, except the one provision therein that, if the voter should fail to remove the secondary stub from his ballot, and deposit it in the box with that stub on it, it would not be invalidated, but should be counted. That provision furnishes a ready and simple method by which those who count the ballots, and those who are authorized by the statute to be present and witness it may ascertain how the voter who deposited his ballot with the secondary stub upon it voted at the election, since that stub not only contains the name of the voter, but also the number of his ballot, and which those who count the ballots, or are legally present at their counting, could readily see and know to a certainty how and for whom the voter cast his ballot, and all of which would be created by the neglect or intentional refusal of the voter to detach the secondary stub from his ballot before depositing it. It would furnish an unerring mark of the ballot and a positive identification of its voter. The voter himself could not more effectually identify his ballot by any act of his; nor could he violate the constitutional requirement of secrecy to any greater extent by voting an open ballot where the officers of the election may see how he voted, and both of which we have uniformly held since the adoption of our present Constitution could not be done.

It was and is undoubtedly proper for the Legislature to prescribe that the secondary stub should be detached from the ballot before it was deposited, and which requirement would necessarily be in furtherance of the mandatorial requirements of the constitutional provisions for a secret ballot. To provide that the ballot should be counted, notwithstanding the secondary stub

was not detached from it, would destroy the constitutional requirement for a secret ballot and sufficiently so, as we think, to annul that provision. The question, however, is only indirectly presented in this case, if indeed it is presented at all, since it could only arise between properly interested parties when the time came to count such ballots and not in this proceeding where the questions of only the constitutionality, and of the proper interpretation of the statute, are involved. But, for the direction of the officers whose duties it is to count and certify the returns in both primary and general elections, we have concluded to pass upon the question and hold it invalid as above indicated.

Our close scrutiny of section 2 of the new act, which is the re-enacted section 1472 of our present Statutes, fails to disclose any other provision therein so militating against the secrecy of the ballot as to render it invalid or that it invades any other constitutional provision so as to have that effect. We do not think the contention that the requirement therein for the ballot boxes to be fifteen feet from the election officers, or the requirement that the voter should deposit his ballot in the box, instead of by one of the judges doing so as heretofore prescribed, or the provision for the voter to detach the secondary stub, invades either section 6 or section 147 of the Constitution, or any other section of that instrument. None of the requirements puts it beyond the power of the election officers to observe and see the actions and conduct of the voter in performing any of the above-prescribed acts; nor do they obstruct the officers from detecting any fraud on the part of the voter in casting and depositing his ballot, even if it should be thought that the restrictions in the new act are less stringent and less adapted for the prevention of fraud than those contained in the amended and old section; for it must be remembered that courts cannot declare statutes invalid because they do not provide the most efficacious means of accomplishing their purpose. It is only when their provisions necessarily and openly transgress constitutional limitations, or inevitably lead to such transgressions, as does the above-declared invalid provision for the counting of ballots from which the secondary stub was not detached, that statutes may be declared invalid. Therefore, if it were true that the provisions of the new act looking to the preservation of the purity of the ballot that is voted and deposited in the box are not as much adapted for that

purpose as were those of the old act, or of others that might be imagined, it could not then be insisted that the new act was invalid for that reason alone, unless the prescribed provisions for that purpose were so inefficient and defective as to invite fraud and to create easy and certain opportunities for its perpetration and whereby constitutionally declared policies would be ignored. We therefore conclude that the court erred in subdivision 2 of its judgment in holding all of section 2 of the new act invalid, and the judgment should be modified so as to limit and confine that portion of the judgment to eliminating only the provision for the counting of ballots deposited without detaching the secondary stub.

That it is competent to declare certain parts of an act unconstitutional without affecting the remainder of it is no longer an open question when the discarded invalid portion would leave the act in such form and shape as to carry out its central idea and purpose and it can be reasonably presumed that the Legislature would have enacted it with the invalid portion omitted. See Neutzel v. Williams, 191 Ky. 351, 230 S. W. 492; State Insurance Board v. Greene, 185 Ky. 190, 213 S. W. 218; Commonwealth v. Hatfield Coal Co., 186 Ky. 411, 217 S. W. 125, and cases cited therein. Also see the text in 36 Cyc. 976, sec. 3, and 6 R. C. L. p. 121, sec. 121.

3. The portion of the judgment involved in subdivision 3 thereof requires the county court clerk to provide more than one ballot box in the exercise of his sound discretion for precincts where there is such a large number of voters as that one box would not be sufficient to contain the ballots to be cast therein. We detect nothing in the new act against that construction. It is true that throughout its provisions the ballot box is referred to in the singular; but, under the provisions of section 457 of our Statutes, it is expressly provided that "a word importing the singular number only may extend and be applied to several persons or things," etc. However, without the aid of that section, the statute only prescribes the *character* of receptacle as a unit in which the ballots should be deposited after they were voted, and in which they should be contained until they were counted, and it does not purport to deal with the *number* of them. It is to be presumed that it was not the intention and purpose of the Legislature to so limit the number of boxes to be furnished the precincts as to prevent legal voters from casting their ballot who lived in one where there are so

many electors that one box could not contain the ballots of all within the precinct. The essential and central purpose of the Legislature in enacting the new act appears to be the accomplishment of fairness in elections, and we cannot and will not attribute to it the intention to prescribe in any manner so as to defeat that object, although some of the changes made therein might appear, as is argued in this case, to be ill-adapted for that purpose. We therefore conclude that the judgment in so far as it authorized the county court clerk in the indicated circumstances to provide more than one box was proper, and it will not be disturbed.

4. By subdivision 4, supra, of the judgment, the trial court held that the new act repealed by implication section 1550-17 of our present Statutes, relating to ballots and ballot boxes to be provided for the holding of *primary* elections, and in which it is expressly stated that "separate ballot boxes shall be supplied for each party and the ballots cast shall be placed in the appropriate party boxes, but a ballot shall not be disqualified by reason of having been in the wrong ballot box." Primary elections, held for the purpose of choosing nominees for office by political parties, are created for the benefit of such political organizations as are entitled to take advantage of them when it is determined by the party authorities to do so. When such determination is made, that particular political party then chooses to hold a primary election and, in a sense, the election, though held by different political parties on the same day and conducted by the same officers, is a separate one from the one being held at the same time and place by another political party. So that the furnishing of one ballot box for each political party so choosing its nominees through the primary election does not militate against the idea of a single box for each precinct, since in that event neither party would be entitled to but one box for the precinct. But, whether that be true or not, we have already seen that the new act should not be interpreted so as to require only one box for each precinct, and with that in mind, and also remembering that repeals by implication are not favored and should not be adjudged, except upon it being made to appear that it was the undoubted intention of the Legislature to nullify the first act by the last one or that the terms of the latter are so repugnant to those of the former as to be impossible of administration (Thomas v. Hurst Home Insurance Co.,

186 Ky. 178, 216 S. W. 368, and City of Newport v. Klatch, 189 Ky. 300, 224 S. W. 844), we have concluded that the new act should not be construed as repealing section 1550-17 of the primary election law, and that the court erred in rendering this subdivision of its judgment.

5. We find nothing in the new act authorizing the interpretation that it was the intention of the Legislature to prescribe a separate set of keys for each ballot box. On the contrary, we interpret its language to mean that each of the three locks fastening the lid to the ballot box should be so constructed as that the key to one of them will not unlock either of the other two, and that it is competent thereunder to have the same set of locks, so arranged as indicated, for each ballot box. Such a construction does not widen the door for possible fraud on the part of the county court clerk and the two county election commissioners, each of whom is made the custodian of the key to one of the locks, and the county court clerk who is made the custodian of the third one, any more than it would be so if the same three persons had separate keys for one of the locks on each of the boxes for the entire county. The latter interpretation would enable the custodians of the keys to open any of the ballot boxes with one of their large bunch of keys the same as they would be enabled to do with only one key for a single lock on all of the ballot boxes of the county. It was competent for the Legislature to choose between the two methods of locking the boxes, and we think it wisely did so by permitting, under our interpretation of the new act, only three keys for all of the boxes of the county with the distributed custody of them as prescribed in the act, and that as much safety was thereby provided for as would be obtained by adopting separate locks and keys for each box. We therefore conclude that this fifth subdivision of the judgment was and is correct.

Because of the brief time within which this opinion had to be prepared, in order to dispose of the case at this term of the court, so that the new act could be put into effect as quickly as possible, we have not elaborated the discussion of the questions involved to the extent that might otherwise have been done; but we have endeavored to make our conclusions sufficiently clear that they may be readily understood by the officers who are called upon to administer that act.

Summarizing, our conclusions are: That the contract of the board of election commissioners, whereby it

awarded the construction of the ballot boxes, was premature because made before the act took effect; that all sections and parts of sections of the new act are valid, they not invading any constitutional inhibition, except the provision in section 2 validating a deposited ballot without detaching the secondary stub, and that only so much of the section is invalid, because affording an easy and ready opportunity for destroying the secrecy of the ballot, and for which reason the proviso should be eliminated from the section; that the county court clerk, whose duty it is to provide the ballot boxes for the various precincts of the county, may, in the exercise of a sound discretion, furnish to a precinct more than one ballot box if the number of voters therein be such as to require it so as to enable the voters therein to deposit their ballots; that the new act does not impliedly repeal section 1550-17 of our present Statutes relating to primary elections; and that duplicate sets of three locks for the lids to the ballot boxes may be used upon each box for each precinct in the county, and that only one set of keys, one of which shall be fitted to only one lock on each box, is all that the statute requires.

Wherefore the judgment in the respects that it conforms to this opinion is affirmed, but, in so far as it does not do so, it is reversed, with directions to modify it as herein indicated.

The whole court sitting, except Judge DIETZMAN, who was absent.