## Fletcher et al. v. Hampton et al.

(Decided Nov. 4, 1938.)

RODNEY HAGGARD and THOMAS A. WALLER for appellants.

D. L. PENDLETON, R. R. CRAFT and FRANKLIN ·STEVEN-
SON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE STITES—
Affirming.

A local option election was held in Clark County on May 14, 1938, resulting in two thousand five hundred and fifty-eight votes cast in favor of the adoption of the law and two thousand four hundred and eighty-four votes cast again it. Thereafter a contest of the election was instituted by the appellant, H. S. Fletcher. A second contest, filed by the appellant, N. C. Oliver, was consolidated with the Fletcher proceeding, and the two cases have since been practiced as one. With the two original contest petitions there are filed five amended petitions. The defendants filed a general demurrer which was sustained and, plaintiffs declining to plead further, the petitions were dismissed. This appeal followed.

It is argued for the appellants: (1) That the de-

fendants waived their general demurrer by filing a stipulation as to certain admitted facts; (2) that the election should be declared void because a secondary stub was printed on the ballots that were used in the election; (3) that seventeen college students who were not legally entitled to vote were permitted to vote for the adoption of the local option law, and sixty-four votes which were cast against the adoption of the local option law were not counted because the secondary stub was left attached to their ballots when deposited in the box, thus making a difference of eighty-one votes which would have changed the result of the election; and (4) that the "General Registration and Purgation Act" (Acts 1938, Chap. 111) was not given effect and, as a result, the registration was not properly made up before the election.

An examination of the stipulation by which it is claimed that appellees waived their general demurrer fails to disclose any fact not already alleged. It was obviously competent for the court to consider the stipulation together with the petition and to determine whether or not a cause of action existed. The rules concerning waiver of a demurrer can apply only when some pleading or subsequent step in the case cures the defect to which the demurrer was addressed. There is no merit in this contention.

It appears that all of the ballots furnished by the County Clerk for the local option election had secondary stubs on which was printed the number of the ballot and a space for the name and residence of the voter. By sec. 1460 of the Kentucky Statutes, it is provided, in part:

"At the top of the ballot and separated from it by a perforated line shall be a stub, containing the consecutive number of the ballot and a space for the name and residence of the voter. No other or secondary stub shall be attached to the ballot."

The purpose of the secondary stub which was formerly required to be attached to each ballot was to prevent what is known as "chain voting." By some devious means, persons who desired to purchase votes, and who had a quite proper disregard for the promises of a vote-seller, would procure a ballot which they would mark and turn over to the corrupt voter. He would go

into the poll, get a new ballot, enter the booth, and there substitute the marked ballot for the new one and place the marked ballot in the box. He would then take the unused ballot with him and present it as evidence that he was entitled to be paid. This new ballot was then marked and used similarly with the next voter. The secondary stub was adopted as a means to break up the practice, and to identify the ballot given to the voter as the same ballot that went into the box. Prior to 1930, it was made the duty of the election officers to remove the secondary stub from the ballot before it was placed in the box. Of course, if the stub was not removed, it showed the name of the person voting and the secrecy of the ballot was thus destroyed.

In 1930, c. 49, the Legislature placed upon the voter the duty of depositing his own ballot in the box and likewise put the duty on him of removing the secondary stubs. It was thought however that voters, through ignorance, might fail to remove this stub and it was therefore provided that this failure should not invalidate the ballot. This provision of the 1930 Act was held unconstitutional when the question was presented to this court in the case of State Board of Election Commissioners v. Coleman, 235 Ky. 24, 29 S. W. (2d) 619, wherein it was said [page 623]:

"It was and is undoubtedly proper for the Legislature to prescribe that the secondary stub should be detached from the ballot before it was deposited, and which requirement would necessarily be in furtherance of the mandatorial requirements of the constitutional provisions for a secret ballot. To provide that the ballot should be counted, notwithstanding the secondary stub was not detached from it, would destroy the constitutional requirement for a secret ballot and sufficiently so, as we think, to annul that provision."

When section 1460 was again amended in 1936, it was determined to exclude the secondary stub entirely. It will be observed however that the decision in State Board of Election Commissioners v. Coleman, supra, does not determine that the use of secondary stubs is contrary to the Constitution. The case goes no further than to hold that a ballot from which the secondary stub has not been removed should not be counted. Cer-

tainly the mere fact that secondary stubs were attached to the ballots in violation of the statute did not render the entire election void. Compare Skaggs v. Fyffe, 266 Ky. 337, 98 S. W. (2d) 884. It was incumbent upon appellants to allege facts showing that the use of the secondary stubs changed the result of the election. This they have failed to do.

It is alleged that one hundred and fifty-five ballots were destroyed by reason of the fact that the secondary stub was not detached when the ballot was placed in the box. However, it is not asserted that these one hundred and fifty-five ballots were against the adoption of the local option law. On the contrary, it is simply alleged that sixty-four votes which were cast against the adoption of the local option law were not counted because the secondary stub was not detached. Presumably, therefore, the remaining ninety-one votes of the one hundred and fifty-five not counted must have been marked in favor of the adoption of the local option law, and it thus appears that no change in the result would be effected even if all of the spoiled ballots were counted. In any event, we can not speculate away the seeming result as duly certified.

Since we have concluded that the use of secondary stubs did not of itself render the election void, and that the facts alleged failed to show that the use of these stubs changed the result of the election, it is unnecessary to consider the situation presented by the allegations regarding the seventeen college students who, it is claimed, were improperly permitted to vote.

Finally, it is urged that, under the provisions of the ''General Registration and Purgation Act,'' it was the duty of the County Court Clerk to close the registration books fifty-nine days prior to the election and that this was not done. Section 14 of the Act requires the closing of the registration books for fifty-nine days prior to any primary or general election. It says nothing about special elections. Under the Act as it now exists, the registration books are closed for approximately four months for the purpose of purging the lists and we see no reason why an additional two months should be necessary before holding a special election. It is provided by section 10 of the Act that the County Board of Registration and Purgation shall examine the registration

books "before any general, special, or primary election," but there is no reason why we should imply a requirement that the books be closed before a special election in the absence of an express provision to that effect in the statute. The very fact of the omission indicates that the Legislature did not consider it necessary to close the books in such a situation.

We conclude that the trial court did not err in sustaining the demurrer to the petitions. Judgment affirmed.